UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BEFAITHFUL COKER,

CASE NO.: 3:22-cv-518-MMH-LLL

Plaintiff,

v.

SYLVESTER WARREN, III; et. al.

Defendants.

_____________________________________

**LAKE CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

Defendants, AUDREY SIKES, CITY COUNCIL OF LAKE CITY FLORIDA, CHRISTOPHER TODD SAMPSON[1], JAKE HILL, EUGENE JEFFERSON, STEPHEN WITT AND FRED KOBERLEIN, JR. (collectively the "CITY DEFENDANTS"), pursuant to Rules 8, 10(b), and 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss Counts I, II, V, VI, VII, VIII, IX and XI of Plaintiff's Third Amended Complaint ("the Complaint"). Alternatively, the City Defendants move for a more definite state pursuant to Rule 12(e), Federal Rules of Civil Procedure.

**INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff, Befaithful Coker filed this lawsuit *pro se,* in the District Court of Orlando on May 6, 2022. **Doc. 1**. The initial complaint, filed on behalf of Ms.

[1] The undersigned is representing Mr. Sampson in his official capacity but not in his individual capacity.

Coker and her minor children sued 24 defendants and contained 92 pages of allegations, a "Certificate of Emergency" seeking an emergency hearing and several attachments.

On May 9, 2022, Ms. Coker's lawsuit was transferred to the Jacksonville Division pursuant to local rule 1.04. **Doc. 2**. On May 10, 2022, Ms. Coker filed an Amended Complaint in the Orlando Division. **Doc. 3**. On May 16, 2022, this Court, sua sponte, issued an order striking the Amended Complaint because, among other deficiencies, it was an impermissible shotgun pleading. The order pointed Plaintiff to available resources for learning about pleading and procedural rules and ordered Plaintiff to file a second amended complaint consistent with the directives of the Order. **Doc. 5.** The Court's Order provided specific guidance to Plaintiff:

> Pursuant to Rules 8(a)(2) and 10(b), the second amended complaint shall set forth separate causes of action in numbered counts against specific defendants and contain "a short and plain statement" of Coker's claims demonstrating that Coker is entitled to relief. See Rules 8(a)(2), 10(b). Coker must avoid the shotgun pleading deficiencies set forth above and describe in sufficient detail the factual basis for each of her claims and how each Defendant is responsible.

**Doc. 5** at 6-7. The Order noted that failure to follow the Court's Order might result in dismissal of Plaintiff's lawsuit. **Doc. 5.**

Plaintiff filed her Second Amended Complaint on June 2, 2022, adding two additional defendants, increasing the number to 15 defendants. **Doc. 8**. On June 7, 2022, Plaintiff filed a Third Amended Complaint, naming 13 defendants,

including two new defendants[2]. **Doc. 10.**

On June 27, 2022, the Lake City Defendants filed an unopposed motion to extend and clarify a deadline for filing a response to the Third Amended Complaint. **Doc. 12.** The City Defendants also notified the Court of two related state court lawsuits. The Court granted the Lake City Defendants' requests for extensions for this response, due July 22, 2022. **Doc. 13, 86, 92.**

## MOTION

1. Plaintiff's 11-count Complaint, attempts to allege various claims pursuant to 42 U.S.C. §1983, 42 U.S.C §1985(3), 52 U.S.C. §10301, 10304 & 10308, and supplemental state law claims. Counts I, II, V, VI, VII, VIII, IX and XI, asserted against the City Defendants, should be dismissed as a matter of law for failure to state a claim for relief.

2. Each of Plaintiff's claims fails to meet the pleading requirements of the Federal Rules of Civil Procedure and/or Federal or Florida substantive law.

3. The claims asserted against the CITY DEFENDANTS in their official capacities should be dismissed because naming public officials in their official capacities constitutes an action against the public entity that the officials are serving.

4. The claims against the CITY DEFENDANTS in their individual capacities should be dismissed because they are not alleged with specificity and

[2] The number of defendants is confused throughout the pleadings stage. Plaintiff moved to dismiss two other defendants on June 7, 2022, and the Court granted that motion on June 10, 2022. Doc. 9 and 11.

clarity as to which claims are asserted against which defendant, in violation of Rules 8 and 10, *Fed. R. Civ. P.*

WHEREFORE, the City Defendants respectfully request that the Court dismiss the Third Amended Complaint or in the alternative require Plaintiff to replead the Complaint with a more definite statement to provide clarity sufficient for the City Defendants to form a response to the Complaint.

## MEMORANDUM OF LAW

### I. MOTION TO DISMISS STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); See, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. In deciding Rule 12(b)(6) motions, the Court must limit its consideration to well pled factual allegations, documents central to, or referenced in, the complaint,

and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (discussing a Rule 12(b)(6) dismissal); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).

## II. FACTUAL INTRODUCTION

Plaintiff, Befaithful Coker, is "a community activist and volunteer known for organizing community events and making both public and protected disclosures concerning local government." Doc. 10, ¶6. Ms. Coker was selected to serve on a vacant position on the Lake City Council on October 26, 2021 but was not sworn in or seated. *Id*. ¶61. Many of her claims regarding the City Defendants relate to this issue.

## III. RELATED STATE COURT PROCEEDINGS

Ms. Coker is currently a party in related state court litigation against the City Defendants (excluding City Attorney Koberlein) and Stephen Douglas that is ongoing in the Third Judicial Circuit Court filed initially in Columbia County (Case No. 21-268 and consolidated Case No. 21-288-CA). This case was appealed prematurely to the Florida First District Court of Appeals (1D22-281 and 1D22-463). On 11.8.21, Ms. Coker filed a petition for writ of mandamus with the circuit

court seeking a writ of mandamus to compel "the City Council individually and collectively to seat [Ms. Coker] as the Council member in City Council District 14..." **Exhibit A** (Petition for Writ of Mandamus Case # 21-268-CA).[3] She later added sunshine law violation claims. This case continues in litigation in state circuit court and addresses some of the same issues this Court is asked to address.

## IV. CLAIMS ASSERTED AGAINST CITY DEFENDANTS

Plaintiff's Third Amended Complaint asserts the following claims against the Lake City Defendants:

| | |
|---|---|
| **Count I:** | Florida's Public Whistleblower Act, Fla. Stats. §112.3187 |
| **Count II:** | Constitutional Liberty Interest claim per 42 U.S.C. § 1983 ("Right to participate in public meetings") |
| **Count V:** | Constitutional Liberty Interest claim per 42 U.S.C. § 1983 ("liberty interest in holding public office") |
| **Count VI:** | Due Process Claim per 42 U.S.C. §1983 |
| **Count VII:** | Right to participate in political process per 52 U.S.C. §10301, 10304 & 10308 (Voting Right Act claims) |
| **Count VIII:** | Claim per 52 U.S.C. §10301, 10304 & 10308 relating to relating to rezoning in 2013. (Voting Right Act claims) |
| **Count IX:** | Claims per 42 U.S. C. §1985 relating to preventing Plaintiff from performing duties and conspiracy claims. |
| **Count XI:** | Intentional Infliction of Emotional Distress. |

[3] A court may take judicial notice of matters of public record, such as court pleadings and documents incorporated into the complaint by reference. *See,* Fed. R. Ev. 201(b)(2)(Authorizing judicial notice of facts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.) *Ladd v. City of West Palm Beach*, 681 F. App'x. 814, fn 2 (11th Cir. 2017); *Erias v. Florida*, 239 F. Supp. 3d 1331, 1341 (M.D. Fla 2017).

**a. Any claims that Ms. Coker asserts should be asserted against the City of Lake City and not the Lake City Defendants individually or in their official capacities.**

The Complaint asserts claims against four council members, the City Attorney and the City Clerk, all in their official and individual capacities. Ms. Coker's claims against all defendants in their official capacities should be dismissed and if any valid claim remains, the City should be substituted as the sole Defendant. Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, because the real party in interest is the entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); see also *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam) (affirming a direct verdict entered in favor of police officers sued in their official capacities where the City remained as a defendant because "to keep both the City and the officers sued in their official capacity as defendants...would have been redundant and possibly confusing to the jury"); *De Armas v. Ross*, 680 So. 2d 1130 (Fla. 3d DCA 1996) (affirming dismissal of police officers sued in their official capacities where the City was also named as a defendant, citing Busby).

A suit against public official defendants in their official capacities is, in actuality, a suit against the governmental entity which employs the officials. *Cooper v. Dillon*, 403 F.3d 1209, 1221 n.8 (11th Cir. 2005) (discussing official

capacity claims pursuant to § 1983); § 768.28(9)(a), *Fla. Stat*.; *Dept. of Educ. v. Roe*, 679 So. 2d 756, 759 (Fla. 1996) (public officials who defend tort suits against the state are not sued in their personal capacities). To the extent that the Third Amended Complaint states a valid claim, it should be asserted solely against the City of Lake City and the named Lake City Defendants should be dismissed.

**b. The Third Amended Complaint fails to state a claim against any Lake City Defendant in his or her individual capacities.**

The Third Amended Complaint is unclear with regard to its attempt to state individual capacity claims. The Complaint contains no specificity as to which defendant committed which violation of law. Other than the allegations against Councilman Sampson in Count IV for defamation, all acts of the Lake City Defendants are asserted against them based on the performance of their official duties. Accordingly, the claims against Lake City Defendants in their individual capacities are without merit and should be dismissed based on failure to meet the mandatory pleading requirements of Rules 8 and 10.

**c. The Third Amended Complaint remains a "shotgun" pleading that violates Fed.R.Civ.P, 8(a)(2) and 10(b) and should be dismissed.**

The Third Amended Complaint asserts eleven counts. Unfortunately, the Complaint alleges numerous claims by Ms. Coker against "Defendants" without providing any detail as to which Defendant committed the allege violation and which fact relates to which legal claim.

Pursuant to Rule 8(a)(2), Fed. R. Civ. P; a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."

"Each allegation must be simple, concise, and direct." Rule 8(d)(1). Pursuant to Rule 10(b), each claim founded on a separate transaction or occurrence must be stated in a separate count. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Dismissal for failure to comply with Rules 8(a)(2) and 10(b) is appropriate under a court's "inherent authority to control its docket and ensure prompt resolution of lawsuits." *Id.* at 1320. Dismissal under Rule 8(a)(2) or Rule 10(b) is warranted if "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings'." *Id.* at 1320. Shotgun pleadings "unnecessarily tax the time and resources" of courts. *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001)(abrogated on other grounds)(stating, "shotgun pleadings wreak havoc on the judicial system."). When faced with a shotgun complaint, the Eleventh Circuit has held that "a district court that receives a shotgun pleading should strike it and instruct counsel to replead the case – even if the other party does not move the court to strike the pleading." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352 (11th Cir. 2020).

A complaint is considered a shotgun pleading when "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (Dismissing a 58-page complaint naming 14 defendants,

charged in each count that was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged…"). A shotgun pleading "is in no sense the 'short and plain statement of the claim' that Rule 8 requires[.]" *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

In *Weiland*, the Eleventh Circuit identified four types or categories of shotgun pleadings, opining:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1321–23.

The Complaint violates the third and fourth categories of shotgun pleadings; therefore, it would be entirely appropriate for the Court to dismiss it.

## V. Specific Counts

The City Defendants' concerted effort to interpret Plaintiff's conclusory and co-mingled allegations is outlined as to each count of the Complaint in the

substantive arguments below, justifying dismissal of Plaintiff's claims.

a. **Count I: Plaintiff has failed to state a claim for relief under Florida's Public Whistleblower Act, Fla. Stats. §112.3187**.

In Count I, Plaintiff attempts to state a claim pursuant to Florida Statute §112.3187, the Florida Public Whistleblower's Act ("FWBA"). The legislative intent of this statute is to protect employees and persons from retaliatory action after they: "disclose information to an appropriate agency alleging improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee." §112.3187(7). Under this law, the City is prohibited from taking "any adverse action that affects the rights or interests of a person in retaliation for the person's disclosure of information under the statute. §112.3187(4)(b). The nature of information disclosed "must include":

> (a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.
> (b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

Fla. Stat. §112.3187(5)(a)(b). The Act defines "Gross mismanagement" as "a continuous pattern of managerial abuses, wrongful or arbitrary and capricious actions, or fraudulent or criminal conduct which may have a substantial adverse economic impact." §112.3187(3)(e). The information must be disclosed to "a chief executive officer as defined in s. 447.203(9) or other appropriate local

official." §112.3187(6). For the purposes of Lake City, the chief executive officer is the City Manager. Section 112.3187(7) provides that employees and persons protected include:

> ...persons who disclose information on their own initiative in a written and signed complaint; who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity; who refuse to participate in any adverse action prohibited by this section; or who initiate a complaint through the whistle-blower's hotline or the hotline of the Medicaid Fraud Control Unit of the Department of Legal Affairs; or employees who file any written complaint to their supervisory officials or employees who submit a complaint to the Chief Inspector General in the Executive Office of the Governor, to the employee designated as agency inspector general under s. 112.3189(1), or to the Florida Commission on Human Relations.

Fla. Stats. § 112.3187(7). Plaintiff alleges in paragraph 17 that she disclosed information "to appropriate agencies alleging improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee" and City defendants (in addition to Warren, Bowden, George, and Gambles) retaliated against her by defaming and conspiring to deny Plaintiff's civil rights. Plaintiff also makes several allegations of disclosures made to the City Council, some of which are dated and others which are not dated. Doc. 10, ¶18-28.

The retaliation Ms. Coker alleges to have suffered is unclear:

> In retaliation for making protected disclosure Plaintiff believes her application to fill a vacancy on the Planning and Zoning Board in March 2020 was delayed by Defendant City Council until December 2021 and denied according to Defendant City Council because Plaintiff had been appointed on October 26, 2021 selecting Plaintiff to fill a vacancy in District 14 on the City Council.

Doc. 10, ¶30. Even assuming that the "disclosures" meet the statutory requirement, which is questionable, due to the insufficiency of dates alleged, it is impossible to discern whether the Plaintiff timely made her reports and the connection of her "disclosures" to her alleged retaliation is unclear. More importantly, §112.3187 only provides remedies for employees. §112.3187(9). Plaintiff seeks damages as a remedy, but does not allege that she was damaged. Nor does she allege the nature of her damages. Doc. 10, at 16. Plaintiff also seeks punitive damages, which are not recoverable under the statute and injunctive relief without stating what she wants the Court to enjoin.

For these reasons, Plaintiff has failed to state a valid claim for relief under Fla. Stat. §112.3187; accordingly, this claim should be dismissed with prejudice.

b. **Plaintiff's 42 U.S.C. § 1983 claims asserted in Counts II, V and VI should be dismissed as a matter of law for failure to state a claim.**

In Counts II and V, Plaintiff sues the City Defendants "for deprivation of her constitutional liberty interest. Plaintiff alleges she was unable to "participate in democracy by attending public meetings without the threat of harm and intimidation to either herself or members of her family." Doc. 10, ¶31. Plaintiff also asserts "a fundamental right to expect safety in attending public meetings, to make reports against violations expecting adequate investigations, to expect officials to adhere to their Oaths of Office, uphold the Constitution of the State of Florida, and to uphold the Constitution of the United States." *Id.* ¶34.

In Count V, Plaintiff asserts that she was denied her liberty interest in holding public office. *Id.* ¶56. Specifically, Plaintiff alleges that on October 26, 2021 the City Council selected her to fill a vacancy on the city council but later refused to allow her to take her seat. *Id.* ¶61.

In Count VI, Plaintiff asserts that she completed her written oath of office and appeared to be sworn in at the November 1, 2021 city council meeting but the city council "instead of performing its ministerial duty and seating Plaintiff on the diocese" presented a resolution to re-select Plaintiff to be appointed to the vacancy and ultimately, she was not seated. *Id.* ¶64, 66, 67. This is alleged to have constituted a violation of Ms. Coker's procedural due process rights.

The 14th Amendment provides in part that no state shall deprive any person of life, liberty or property without due process of law. *U.S. CONST. Amend XIV*. The Supreme Court has interpreted this language as providing two different kinds of constitutional protection: procedural due process and substantive due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994).

Plaintiff is not clear as to whether she is alleging a violation of her substantive or procedural constitutional rights. The substantive component of the Due Process Clause "protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty'." *McKinney*, at 1556. The Supreme Court has deemed that most-but not all-of the rights enumerated in the Bill of Rights and certain unenumerated rights such as the penumbral rights are fundamental rights. *Id*. Where substantive rights are created only by state

law, they are not protected by the substantive component of the due process clause. *Id*.

Procedural due process requires that a governmental entity follow appropriate procedures, and provide notice and an opportunity to be heard, when it seeks to deprive a person of a protected property or liberty interest. *North Florida Educational Development Corp. v. Woodham*, 942 F.Supp. 542, 550 (N.D.Fla. 1996). The Eleventh Circuit has made it clear that no procedural due process claim may be asserted unless and until the state refuses to provide a process that is sufficient to remedy a constitutional violation. *McKinney v. Pate,* 20 F.3d 1550 at 1557 (11th Cir. 1994).

Because Plaintiff has not alleged a fundamental substantive constitutional right, it appears that Plaintiff is attempting to assert a procedural due process liberty interest violation of the 14th Amendment. A § 1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process." *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir.1994); see also *Bank of Jackson County v. Cherry*, 980 F.2d 1362, 1366 (11th Cir.1993) (describing the elements as: "(1) a constitutionally protected interest in life, liberty, or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation."). Failure to establish any one of these elements is fatal to a

plaintiff's procedural due process claim under § 1983. See *Bank of Jackson County*, 980 F.2d at 1366.

Florida law provides Plaintiff with a remedy for her alleged deprivation of procedural due process. Plaintiff can bring the alleged wrongdoing and procedural violations to the state circuit court utilizing remedies such as a petition for a writ of certiorari or mandamus. Indeed, Ms. Coker has utilized at least one state court process available to her by filing a Petition for Writ of Mandamus in state circuit court. Exhibit A (Plaintiff's Petition for Writ of Mandamus filed in state court). By having these remedies available, Plaintiff cannot assert a failure to provide procedural due process. *See*, *Cotton v. Jackson*, 216 F. 3d 1328 (11th Cir. 2000). Based on this available state court remedy, no claim for procedural due process violation exists. Accordingly, if the unclear claim was intended to be a procedural due process claim, it fails as a matter of law. If it was intended to be a substantive due process claim, it fails for lack of clarity or the allegation of the specific fundamental right that was violated. Either way, Plaintiff's claims asserted in Counts II, V and VI are due to be dismissed with prejudice as a matter of law.

c. **Plaintiff has failed to state a claim for relief in Counts VII and VIII under the Voting Rights Act.**

In Counts VII and VIII, Plaintiff sues the City Defendants for violations of Voting Rights Act (VRA) provisions in 52 U.S.C. § 10301, 10302, 10303, 10304, 10306, 10307(a) and 10308.

In Count VII, Plaintiff takes issue with the statutory qualification fee the City charges to candidates for political office and alleges that the qualification fee charged by the City Council "deprived or attempt [sic] to deprive the Plaintiff of a right secured by section 10301, 10302, 10303, 10304 or 10306 of this title or shall violate section 10307(a) of this title causing undue burden on candidates in violation of Florida Statutes and the United States Constitution." Doc. 10, ¶86.

In paragraph 82, Plaintiff alleges:

> Defendant City Council uses the Qualification Fee to place undue burden on candidates and specifically as a practice which denies disproportionately the rights of black candidates and more specifically female candidates.

In paragraph 84, Plaintiff alleges that the City Council uses the qualification fee to give less of an opportunity to minorities and minority women to participate in the political process. Paragraph 79 alleges that the City's municipal Charter requires a qualifying fee of $1,065.85 for a council candidate, citing Section 506 of the City's Charter. Section 506 of the City's Charter provides:

> All general laws of the State of Florida relating to elections and registration of persons qualified to vote therein which are not inconsistent or in conflict with the provisions hereof or the ordinances of the city, shall be applicable to the City of Lake City.[4]

Section 508 of the City's Charter requires a candidate to pay a qualifying fee equal to 6% of the annual salary of the council seat being sought, but also contains a provision allowing a candidate to qualify by obtaining signatures from

---

[4] The City's charter may be found online at the municode website at https://library.municode.com/fl/lake_city/codes/code_of_ordinances?nodeId=PTICH_ARTVREEL

5% of qualified voters in the district where the potential candidate wishes to run for office:

> Alternatively, in lieu of paying any qualifying fee, a person seeking to qualify as a candidate for nomination or election for any of the designated seats of the city council to be filled, including the office of mayor-councilmember, may qualify to have his or her name placed on the ballot by means of a petitioning process which would require a candidate for election to the respective council seat in the district that he or she seeks to obtain signatures on a petition of at least five percent of the total number of registered voters residing in such district...

Section 508, City Charter. Because these charter provisions apply equally to all potential candidates for municipal office in Lake City, and the Charter provides an option for qualifying without paying a fee by submitting petitions in lieu of a fee, Plaintiff's allegation that the City's Charter provision of requiring a qualification fee "denies disproportionately the rights of black candidates and more specifically female candidates" cannot sustain a VRA claim and should be dismissed with prejudice.[5]

In Count VIII, Plaintiff asks this Court to grant injunctive and declaratory relief based on conclusory allegations of VRA violations. Plaintiff alleges that the City Council created "a practice of rezoning to move a candidate from the districts of incumbents to have an effect of reducing the representation of minorities and minority women from holding public [office] in violation of constitutional liberty

[5] The City's current council consisting of four councilmembers has two African-American male councilmembers, defying Plaintiff's argument. Doc. 10 at 51 (image of Councilman Hill) and 52 (image of Councilman Jefferson).

to due process of law. This allegation relates to a zoning change that the City made in 2013. Doc. 10, ¶88. Paragraph 90 alleges:

> ...the practices of the City Council to revised [sic] district to relocate the streets of candidates running against incumbents is a practice, that has the purpose of or will have the effect of diminishing the ability of any citizens of the United States to elect their preferred candidates of choice (8) conspires to interferes [sic] with any right secured within this section.

Not only is this allegation too conclusory and speculative to state a claim, Plaintiff has failed to establish standing relating to these VRA claims in Counts VII and VIII. Plaintiff has not suffered a particularized injury.

Supreme Court cases have established that the constitutional minimum of standing contains three elements: "(1) an 'injury in fact'—an invasion of a legally protected interest that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical'; (2) a 'causal connection' between [the plaintiff's] injury and the challenged action of the defendant; and (3) a likel[ihood], not merely speculati[on], that a favorable judgment will redress [the] injury." *Gardner v. Mutz*, 962 F.3d 1329, 1338 (11th Cir 2020)(quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)).

Plaintiff must establish for *each* claim these three "irreducible constitutional minimum[s]..." *Lujan*, at 560. The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992). Failure to establish standing provides grounds

to dismiss under Federal Rule of Civil Procedure 12(b)(1). Dismissal of Plaintiff's VRA claims is warranted.

**d. Plaintiff's 42 U.S. C. §1985 conspiracy claims in Count IX fail to state a valid claim as a matter of law.**

In count IX, Plaintiff attempts to sue the City Defendants along with many others (CCSB, Foreman, Douglas, Agents Equality, Warren, Bowden, George, Gambles, Chamber, Smith, Robinson, Williams, Wilson, Fina, Lake City Reporter, Brown, Secretary) alleging conspiracy to violate her rights and violation of 42 U.S.C. § 1985. As to the City Defendants, Plaintiff references the City Council's selection of Ms. Coker to a vacant City Council position on 10.1.21 (instead of the previously selected candidate), followed by Defendants Sampson, Koberlein and Sikes' 10.28.21 communication "about preventing Plaintiff from her public office" which was transmitted to the other councilmembers[6], followed by a councilman's 11.1.21 request to revisit Ms. Coker's selection, followed by the Council's failure to swear Ms. Coker into the seat on 11.1.21. Doc. ¶95, 96, 111.

Plaintiff alleges that she "became the appointed District 14 representative" when she filed her Oath of Office. *Id*. ¶98. Plaintiff further alleges that the Third Circuit Judicial Court's "Self-Executing Order" [to show cause why a petition for writ of mandamus should not be granted] gave the City Council a deadline of 20 days to seat Plaintiff or show cause why she should not be seated. Id. ¶115, Doc. 10-1 p. 19-20.

---

[6] See Doc. 10-1 p. 28. This was an email communication.

Plaintiff then makes allegations against other Defendants, and includes criticism of the pending state circuit court process, Judge Fina, the litigants and their attorneys. Count IX fails to tie the "conspirators" together and explain how they agreed to commit a violation of §1985, but instead is a compilation of criticisms of many parties and their actions. In the end, Plaintiff asks the Court to award Plaintiff money damages against the Lake City Defendants without alleging that she suffered money damages. Doc. 10 at 59. Plaintiff also seeks punitive damages and "injunctive relief to prevent the City Council from condoning, participating, and encouraging this behavior in the future."

The elements of a claim under the "rights and privileges" provision of the federal civil-rights-conspiracy statute in §1985(3) are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection, or privileges and immunities, under the law; (3) an overt act in furtherance of the conspiracy; and (4) an injury. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). To sustain a claim for a conspiracy to interfere with civil rights, the claimant must prove both membership in a protected class and discrimination on account of it. *Id.* at 102.

Plaintiff has failed to meet the standard for establishing a §1985 conspiracy claim. The essence of a conspiracy is an agreement between two or more parties to engage in some act or further some purpose. To establish an actionable conspiracy under § 1985, it is necessary to demonstrate a "meeting of the minds" on the part of the defendants and the alleged co-conspirators to violate the

plaintiff's civil rights. *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989). *Harmon v. Orlando Fla. Sentinel*, No. 89-746-CIV-ORL-19, 1991 WL 128539, at *3 (M.D. Jan. 15, 1991). Plaintiff does not allege sufficient facts to establish a "meeting of the minds" on the part of the Lake City Defendants to conspire to violate her civil rights. Plaintiff fails to allege any agreement or communication between the Lake City Defendants and the other named Defendants. Count IX should be dismissed with prejudice.

**e. Plaintiff's State law claim for Intentional Infliction of Emotional Distress in Count IX should be dismissed for failure to state a claim.**

Plaintiff's claims against the City Defendants for Intentional Infliction of Emotional Distress (IIED) should be dismissed because the allegations among all defendants are co-mingled in Count XI and as to the City, Defendants, the allegations do not rise to the standard for stating a valid claim under the law.

Plaintiff alleges that the City Defendants did not properly enforce its standards of decorum in City Council meetings and announced Plaintiff's name on its agenda because she was in litigation yet failed to announce other litigants' names. Doc. 10, ¶139, 142, 145, 147.

In *Williams v. City of Minneola*, 619 So. 2d 983 (Fla. 5th DCA 1993), the plaintiffs attempted to state a cause of action of IIED against the City of Minneola. There, the court recognized that the state of Florida essentially requires deliberate or reckless infliction of mental suffering on another in order to support such a claim. *Williams*, 619 So. 2d at 986.

For IIED, a plaintiff is required to show that: (1) the wrongdoer's conduct was intentional or reckless; that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous; that is, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Williams*, 619 So.2d at 986. The issue of whether a plaintiff has met the requirements set forth above in a claim for intentional infliction of emotional distress is a question of law. *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. 1st DCA 2001); citing *Baker v. Florida Nat'l Bank*, 559 So. 2d 284 (Fla. 4th DCA 1990).

At no point did the City Defendants' actions rise to the level of "outrageous," "extreme," "beyond all bounds of decency," "atrocious," or "utterly intolerable in a civilized community." Plaintiff's allegations do not rise to the level of conduct Florida law recognizes as "outrageous," "extreme," "beyond all bounds of decency," "atrocious," or "utterly intolerable in a civilized community." As such, Plaintiff's claim of IIED against the City Defendants are due to be dismissed, with prejudice.

The *Williams* court also recognized that Florida Statute § 768.28(9)(a) states:

> the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

619 So. 2d at 986. As alleged, at no point did any of the City Defendants or any agent of the City, act "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." As such, Plaintiff's claim of IIED against the City is due to be dismissed, with prejudice.

## VI. Plaintiff is seeking unsupportable remedies

Throughout the Complaint, Ms. Coker asks the Court to award attorney's fees to her. Ms. Coker is self-represented. Accordingly, the claim for recovery of attorney's fees should be dismissed or stricken pursuant to Rule 12(f), Fed. R. Civ. P. Likewise, Plaintiff's claims for punitive damages against the City Defendants should be stricken because punitive damages are not recoverable against a governmental entity. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981). Plaintiff also asserts claims for damages in each Count of her Complaint but fails to allege that she suffered damages or any detail to support these claims. Finally, Plaintiff seeks injunctive and declaratory relief from the court without stating what she want the court to enjoin or declare. Accordingly, these remedy requests should be stricken.

## VII. The City Defendants move alternatively for a more definite statement.

If the Court is not inclined to dismiss the Third Amended Complaint, alternative relief is requested pursuant to Rule 12(e), *Fed. R. Civ. P.* This rule authorizes a request for "a more definite statement of a pleading to which a

responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Here, a more definite statement is warranted so that the Defendants may intelligently respond to the claims against them. *See Weiland*, 792 F. 3d at 1321 n.10 (When faced with a shotgun pleading, defendants should move for a more definite statement pursuant to Rule 12(e)).

## CONCLUSION

Defendants respectfully request that the Court dismiss the Third Amended Complaint based on the above grounds.

## LOCAL RULE 3.01(g) CERTIFICATION

On July 21, 2022, the undersigned conferred with Ms. Coker via email, requesting her position as to whether she opposes this Motion but she indicated that she would like to review the motion before giving her position. In accordance with local rule 3.01(g)(3) the undersigned will continue attempts to confer with Ms. Coker and supplement this certification with Plaintiff's position.

Dated this 22nd day of July, 2022.

**MARKS GRAY, P.A.**

*/s/ Susan S. Erdelyi*
Susan S. Erdelyi, Esquire
Florida Bar No.: 0648965
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida 32207
Phone: (904) 398-0900
Fax: (904) 399-8440
serdelyi@marksgray.com
jmcduffie@marksgray.com
Attorney for Defendants