# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BEFAITHFUL COKER,

      Plaintiff,

                                Case No. 3:22-cv-518-MMH-LLL

vs.

SLYVESTER WARREN, III, et al.,

      Defendants.

_____/

# **O R D E R**

    **THIS CAUSE** is before the Court on numerous motions to dismiss the Third Amended and Restated Complaint and Demand for Jury Trial (Doc. 10; TAC) filed by Plaintiff Befaithful Coker in this action.   Coker filed a response in opposition to each of the motions.   The motions and responses are as follows:

| Defendant(s)[1] | Motion | Response | Related Count(s) |
|---|---|---|---|
| Northeast Florida Newspaper, LLC d/b/a Lake City Reporter and Todd Wilson (Newspaper Defendants) | Newspaper Motion, Doc. 15[2] | Response to Newspaper, Doc. 122 | Count IX |

---

[1] All Defendants except one, Stephen Douglas, have moved for dismissal.   Coker filed a motion for default judgment against Douglas on December 21, 2022.   See Plaintiff's Motion for Default Judgment (Doc. 171).

[2] The Newspaper Defendants also filed, with leave of Court, a reply in support of the Newspaper Motion.   See Reply Brief (Doc. 146; Newspaper Reply), filed September 16, 2022.

| | | | |
|---|---|---|---|
| Kris Bradshaw Robinson | Robinson Motion, Doc. 49 | Response to Robinson, Doc. 123 | Count IX |
| Lake City, Columbia County Chamber of Commerce and Steve Smith (Chamber Defendants) | Chamber Motion, Doc. 53 | Response to Chamber, Doc. 124 | Count IX |
| Ronald Williams | Williams Motion, Doc. 78 | Response to Williams, Doc. 139 | Count IX |
| Columbia County Board of County Commissioners (the County) | County Motion, Doc. 79 | Response to County, Doc. 138 | Count IX |
| Tomi Brown | Brown Motion, Doc. 80 | Response to Brown, Doc. 142 | Counts VII & IX |
| Joel Foreman | Foreman Motion, Doc. 81 | Response to Foreman, Doc. 141 | Count IX |
| City Council of Lake City Florida; Christopher Todd Sampson; Jake Hill; Eugene Jefferson; Stephen Witt; Audrey Sikes; and Fred Koberlein, Jr. (City Defendants) | City Motion, Doc. 94 | Response to City, Doc. 140 | Counts I, II, V, VI, VII, VIII, IX and XI |
| Sylvester Warren, III; Vanesa George; Glennel Bowden; Nathan Gambles; and Justice and Equality Coalition, Inc. (Coalition Defendants) | Coalition Motion, Doc. 101 | Response to Coalition, Doc. 133 | Count IX[3] |
| Florida Secretary of State Cord Byrd (the Secretary) | Secretary Motion, Doc. 102 | Response to Secretary, Doc. 136 | Counts VII and IX |
| Christopher Todd Sampson (individual capacity) | Sampson Motion, Doc. 110 | Response to Sampson, Doc. 134 | Count IV |

---

[3] Although the Coalition Defendants are also named in Counts III and XI, their Motion does not address those Counts.

| Judge David Fina | Judge Fina Motion, Doc. 131 | Response to Judge Fina, Doc. 158 | Counts IX and X |

All moving Defendants seek dismissal of the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)) for failure to state a claim.   In addition, as specified in more detail below, certain Defendants move to dismiss for lack of standing pursuant to Rule 12(b)(1).[4]   Upon review of the Motions, Responses, and operative complaint, the Court finds that dismissal of this case in its entirety is warranted.

## I.      Standards of Review

### A.      Rule 12(b)(1) — Subject Matter Jurisdiction

A motion to dismiss asserting a lack of standing is a challenge to the Court's subject matter jurisdiction properly considered under Rule 12(b)(1). Townsend v. U.S. Dep't of Agric., No. 2:05-cv-439-FtM-99DNF, 2007 WL 177857, at *1–2 (M.D. Fla. Jan. 19, 2007); Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) (noting that standing "implicates [the Court's] subject matter jurisdiction").   Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United

---

[4] Defendants Williams, Brown, Foreman, and the County also move to dismiss pursuant to Rule 12(b)(4) based on insufficient process because Coker served them with a version of the complaint that had been superseded at the time of service.   See Williams Motion at 10-13; County Motion at 10-13; Brown Motion at 12-14; Foreman Motion at 1-12. Because the Court finds that the claims against these Defendants are due to be dismissed for other reasons, the Court does not address this argument.

States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)).   Article III of the Constitution, by its plain language, limits the jurisdiction of federal courts (the "judicial power" of the courts) to the consideration of Cases and Controversies. Kelly v. Harris, 331 F.3d 817, 819 (11th Cir. 2003) (citing U.S. Const. art. III, § 2, cl. 1; Ala. Power Co. v. U.S. Dep't of Energy, 307 F.3d 1300, 1308 (11th Cir. 2002)).   The doctrine of standing "stems directly from Article III's 'case or controversy' requirement," Bochese 405 F.3d at 974, and ensures that "federal courts do not exceed their authority," Spokeo, Inc. v. Robins, 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).   Indeed, standing "is 'perhaps the most important' jurisdictional doctrine."   Bochese, 405 F.3d at 974 (quoting Bischoff v. Osceola Cnty., Fla., 222 F.3d 874, 877–78 (11th Cir. 2000) (additional citations omitted).   In the absence of standing, a federal court lacks subject matter jurisdiction and is "powerless to hear a case."   Id.; see also Univ. of S. Ala., 168 F.3d at 410 ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

In this action, Coker, "as the party invoking federal jurisdiction, bears the burden of establishing" that she has standing to pursue the claims she alleges in the Third Amended Complaint.   Spokeo, 136 S. Ct. at 1547.   To do so, she

must establish each element of standing "'in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation.'"  See Bischoff, 222 F.3d at 878 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).   As such, "when standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing."  Id.; Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury, 773 F.3d 243, 245 (11th Cir. 2014) ("[W]e presume the plaintiff's 'general allegations embrace those specific facts that are necessary to support the claim.'") (quoting Lujan, 504 U.S. at 561).

The Eleventh Circuit has unequivocally instructed that "[u]nder settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it."  See Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996 (11th Cir. 2020) (quoting Lujan, 504 U.S. at 560–61).   Among these elements, the "foremost" requirement of standing is the existence of an injury in fact.   Id. (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998)).   "An injury in fact consists of 'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"   Id. (quoting Lujan, 504 U.S. at 560).   To qualify as "concrete," the injury must be

- 5 -

"real, and not abstract." Id. (quoting Spokeo, 136 S. Ct. at 1548). To be sufficiently "particularized," the injury "must affect the plaintiff in a personal and individual way." Id. (quoting Spokeo, 136 S. Ct. at 1548). To satisfy the injury element of standing, a plaintiff must establish "[e]ach subsidiary element of injury—a legally protected interest, concreteness, particularization, and imminence. . ." Id. (citing Spokeo, 136 S. Ct. at 1545, and Lujan, 504 U.S. at 560).

## B.    Rule 12(b)(6) – Failure to State a Claim

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state

a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (citations and quotations omitted)). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678-79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Moreover, when the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Id. (citation omitted). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[5] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706); see also Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014).

## II.    Procedural History

Plaintiff Befaithful Coker, acting pro se, initiated this action on May 6, 2022. See Complaint and Demand for Jury Trial (Doc. 1). A few days later, Coker filed an Amended and Restated Complaint and Demand for Jury Trial (Doc. 3; Amended Complaint). On May 16, 2022, the Court struck the Amended Complaint and provided Coker with the opportunity to file a second

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

amended complaint.  <u>See</u> <u>generally</u> Order (Doc. 5).  In the Order, the Court explained the pleading requirements applicable in federal court, including that a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief, state each claim discretely and succinctly without reliance on vague and ambiguous allegations, and avoid generalized allegations lumping defendants together.  <u>Id.</u> at 2-3.  In addition, the Court discussed the Eleventh Circuit's prohibition on shotgun pleadings.

The Court found that the Amended Complaint constituted an impermissible shotgun pleading because Coker improperly reincorporated all allegations of all preceding counts into each successive count of her eleven-count Amended Complaint.  As a result, the Court faced "the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action asserted."  <u>Id.</u> at 5.  In addition, the Amended Complaint was "'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.'"  <u>Id.</u> at 5-6 (quoting <u>Weiland v. Palm Beach Cnty. Sheriff's Office</u>, 792 F.3d 1313, 1322 (11th Cir. 2015)).  Indeed, Coker's Amended Complaint spanned "92 pages, with 224 separate paragraphs and twenty additional pages of exhibits" and contained an "over-abundance of extraneous details" which rendered the pleading "excessively long and difficult to follow."  <u>Id.</u> at 6.  The Court directed Coker to file a second amended complaint and explained that she must "avoid the

shotgun pleading deficiencies set forth above and describe in sufficient detail the factual basis for each of her claims and how each Defendant is responsible." Id. at 6-7.   On June 2, 2022, Coker filed a second amended complaint, see Second Amended and Restated Complaint and Demand for Jury Trial (Doc. 8; SAC), and a few days later, on June 7, 2022, she filed the Third Amended Complaint.[6]   See generally TAC.   Thus, at this time, the operative pleading is the Third Amended Complaint.

In the Third Amended Complaint, Coker asserts several state and federal claims against twenty-four Defendants over the span of eleven counts.   See generally TAC.   The Third Amended Complaint is seventy-five pages long, with over 150 paragraphs, plus numerous sub-paragraphs, and an additional twenty-three pages of exhibits.   For ease of reference, the Court summarizes the eleven counts, causes of action and corresponding Defendants in the following chart:

| Count | Cause of Action | Named Defendants |
|---|---|---|
| I | Florida Whistleblower Act, Fla. Stat. § 112.3187 | City Council, Hill, Sampson, Sikes, and Koberlein |
| II | 42 U.S.C. § 1983, Right to Participate in Meetings | All City Defendants |
| III | Defamation | Coalition Defendants |
| IV | Defamation | Sampson |

---

[6] Although Coker did not obtain leave of Court to file the Third Amended Complaint, given her pro se status, the short timeframe between the filing of the second and third amended complaint, and the early stage of the litigation, the Court declined to strike the unauthorized filing.

| V | 42 U.S.C. § 1983, Right to Hold Public Office | All City Defendants |
|---|---|---|
| VI | 42 U.S.C. § 1983, Due Process | Hill, Sampson, Witt, Jefferson, Sikes, and Koberlein |
| VII | 52 U.S.C. §§ 10301, 10304, & 10308, Qualifying Fee | City Council, Sikes, Brown, and Secretary |
| VIII | 52 U.S.C. §§ 10301, 10304, & 10308, Rezoned Candidate | City Council |
| IX | 42 U.S.C. § 1985, Conspiracy | All Defendants |
| X | 42 U.S.C. § 1983, Right to Seek Justice Through the Courts | Judge Fina |
| XI | Intentional Infliction of Emotional Distress | Hill, Sampson, Witt, Jefferson, Sikes, Koberlein, and Coalition Defendants |

Significantly, in the Third Amended Complaint Coker does not set forth a comprehensive factual background section.  Instead, the relevant facts are spread throughout the Third Amended Complaint, interspersed between the various counts.  And Coker often fails to include or reincorporate the factual allegations into each of the specific counts for which they appear to be relevant. Coker also continues to use vague and conclusory allegations of wrongdoing throughout her pleading.  As a result, it is difficult to piece together a coherent narrative of the events leading to this lawsuit, and once again, the Court "is faced with the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action asserted."  See

Order at 5.[7]   Nevertheless, as best the Court can discern, Coker's claims are premised on the following factual allegations.

## III.   Factual Background[8]

As described in the Third Amended Complaint, Coker is a "community activist and volunteer known for organizing community events, and making both public and protected disclosures concerning local government."   See TAC ¶ 5.  According to Coker, over the span of 2021, she made various "disclosures" to the City Council of Lake City, Florida, and to unidentified "state and federal

---

[7] On this basis, several Defendants argue that the Court should dismiss the Third Amended Complaint as an impermissible shotgun pleading.  Although the Court agrees that the Third Amended Complaint continues to suffer from significant pleading defects, Coker does appear to have attempted to comply in good faith with the Court's prior directives. Indeed, Coker corrects the most egregious of her shotgun pleading errors.  Thus, were the Court to dismiss Coker's claims on non-merits, shotgun grounds, it does not appear that a dismissal with prejudice would be warranted as Defendants request.   See Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1338 (11th Cir. 2005) (explaining that a dismissal with prejudice "is an extreme sanction that may be properly imposed only when: '(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice'").  Significantly, despite the pleading defects, Defendants were able to address Coker's claims on their merits.  As such, the Court declines to dismiss Coker's pleading on shotgun grounds and will proceed to consider the merits of the challenges to her claims.

[8] As stated above, in considering the Motions to Dismiss, "the court reviews a plaintiff's pro se allegations in a liberal fashion, accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff."   See Freeman v. Fine, 820 F. App'x 836, 838 (11th Cir. 2020).  As such, the facts recited here are drawn from the Third Amended Complaint and may well differ from those that ultimately could be proved.

The Court also notes that throughout her Responses to the Motions to Dismiss, Coker includes numerous additional factual allegations that are not part of her pleading.  The Court does not include those facts here and will not consider them in resolving the Motions to Dismiss.  Coker cannot use her briefing "to add new allegations and argue that those new assertions support [her] cause[s] of action."   See Michel v. NYP Holdings, Inc., 816 F.3d 686, 705 (11th Cir. 2016).

agencies" concerning various acts of purported wrongdoing involving the City Council.  <u>Id.</u> ¶¶ 17-28.   The details are vague, but the first disclosure identified in the Third Amended Complaint is alleged to have occurred in January of 2021.  <u>Id.</u> ¶ 18.   The last alleged disclosure for which a discernible date is provided occurred in June 2021.  <u>See</u> ¶ 22.

Although unclear, some of the purported disclosures appear to concern allegedly improper business dealings between Defendant Jake Hill, who is a councilmember, and Defendants Vanessa George, Nathan Gambles III, and Sylvester Warren, III, who appear to have some connection to Defendant Justice and Equality Coalition, Incorporated.  <u>Id.</u> ¶¶ 18-20. Another alleged disclosure relates to Coker's view that Hill and another councilmember, Defendant Eugene Jefferson, abused their office by writing letters in support of Warren when he was facing criminal charges in 2006, and later when Warren was seeking early termination of his supervised release in 2019.  <u>Id.</u> ¶ 21, Ex. B.   Other disclosures pertain to the reinstatement of a "terminated HR Director" who allegedly misrepresented facts in her background.  <u>Id.</u> ¶¶ 23-25. Coker also alleges that she made "disclosures" regarding "improperly formed organizations" and members of the public with felony convictions being placed on "publicly funded boards . . . ."  <u>Id.</u> ¶¶ 27-28.   This "disclosure" appears to relate to Warren and Defendant Glennel Bowden in some way.

Coker alleges that the City Council retaliated against her for making these disclosures by "denying her a position on the Planning and Zoning Board." See id. ¶¶ 11, 30. She also contends that Defendant Audrey Sikes, the City Clerk, acting in retaliation, informed Bowden of Coker's disclosures causing Bowden to "publicize on social media his commitment to use all efforts to prevent [Coker] from holding any office." Id. ¶ 29. Coker asserts that at "multiple meetings between December 2020, and November 1, 2021," the councilmembers (Witt, Jefferson, Hill, and Sampson) would fail to enforce the Council's decorum rules and allow Warren, George, Gambles, and Bowden to "slander and defame" Coker and "hurl threats to her and her minor children repeatedly . . . ." Id. ¶¶ 35-36. According to Coker, the City Council allowed these violations of the decorum rules in retaliation against Coker for making "protected disclosures." Id. ¶ 40.

On October 4, 2021, the City Council announced a vacancy on the Council "created by a resignation of the Vice Mayor." Id. ¶ 61.b. The City Council selected Defendant Stephen Douglas to fill the vacancy on October 13, 2021, but Coker contends they did so improperly "via secret ballot." Id. ¶¶ 93, 94. According to a newspaper article incorporated into the Third Amended Complaint, Coker filed a lawsuit in state court against the City Council challenging the process they used to select Douglas. Id. ¶ 104. Coker alleges that the City Council then withdrew its selection of Douglas and, according to

Coker, "Douglas made no objection."   Id. ¶ 94.   At a meeting on October 26, 2021, the City Council again attempted to fill the vacancy and considered three applicants: Coker, Douglas, and Ricky Jernigan.   Id. ¶¶ 61.a., 95, Ex. A.   After several rounds of deadlocked voting, the City Council ultimately selected Coker to fill the vacant seat by a vote of three (Jefferson, Hill, and Defendant Stephen Witt) to one (Defendant Christopher Todd Sampson).   Id. ¶ 61.a., Ex. A.   Two days later, Sampson exchanged emails with the City Attorney, Defendant Fred Koberlein Jr., and Sikes, concerning the Council's ability to reconsider Coker's appointment.   See id. ¶ 95, Ex. C.   Koberlein advised that the Council's procedures did not permit a motion for reconsideration of the vote.   Id., Ex. C. Sikes shared this information with Jefferson, Hill, and Witt.   Id. ¶ 96.

According to Coker, on November 1, 2021, she "filed her Oath of Office and scheduled necessary training and onboarding" with Sikes.   Id. ¶¶ 61.f., 64, 98.   Nevertheless, at its meeting on November 1, 2021, the City Council refused to seat Coker.   Id. ¶ 99.   Rather, according to Coker, when Koberlein presented a resolution to "memorialize [Coker's] appointment," Hill announced that he had a "change of heart after learning [Coker] had a past" and voted against the resolution.   Id. ¶ 61.h., 67, 111.   Coker incorporates a newspaper article concerning the November 1, 2021 meeting into her Third Amended Complaint.   See id. ¶ 104.   According to this article, titled "No seat for Coker

either," the City Council failed to approve the resolution to seat Coker by a 2-2 vote, with Hill and Sampson "casting the dissenting votes."   Id.

Coker asserts that at this meeting Defendants Warren, George, and Bowden made "boisterous, slanderous and defaming statements" that Coker "was a prostitute, incapable of managing her financial affairs, possessed [a] criminal background and other demeaning characterizations that were each untrue, defaming and without the requisite [sic]."   Id. ¶¶ 97, 99.[9]   In addition, according to Coker, Defendant Steve Smith, representing Defendant Columbia County Chamber of Commerce, spoke at the meeting and expressed his support for Douglas.   Id. ¶ 102.   As set forth in the Third Amended Complaint, Smith stated that Douglas "was the only candidate that looked like someone who would garner support from the likes of a[n] Amazon CEO Jeff Bezos."   Id. ¶¶ 102, 113.   According to Coker, rather than conducting the "ministerial" or "ceremonial" installation at the November 1, 2021 meeting, Sikes, Witt, Jefferson, Sampson, and Koberlein "sat in silence . . . ."   Id. ¶¶ 107-110, 112. Coker maintains that the City Council and Hill "denied [Coker] the public office

_____

[9] According to the same incorporated newspaper article, Bowden said Coker "had previously been arrested and had filed for bankruptcy in two states.   Bowden said he didn't believe she should serve as the District 14 council representative."   See id. ¶ 104.   The newspaper reports it was this information that caused Hill to change his vote.   Coker is quoted in the newspaper as stating that she has "no shame for who I am and make no excuses . . . .   I am not ashamed of using legal remedies to live, that's what our city needs."   Id.

after its [sic] selection on October 26, 2021 as retaliation for the protected disclosures of gross waste and abuse of public offices."   Id. ¶ 37.

Based on the City Council's refusal to seat her, Coker filed a petition for a writ of mandamus in state court on November 8, 2021.   See id. ¶ 61.i.   That same day, a state court judge issued an "Alternative Writ in Mandamus, and Order Nisi in Prohibition."   Id. ¶ 61.j., Ex. D.   The Writ required Sikes and the City Council to "Show Cause within 20 days of the date of this Order as to why" Coker's petition should not be granted.   Id., Ex. D.   And the Writ stayed all City Council proceedings related to filling the vacant seat pending a final resolution of the petition.   Id., Ex. D.   Thereafter, the case was assigned to the Honorable David Fina, a Florida circuit court judge, who is also a named Defendant in this action.   Id. ¶ 103.   According to Coker, Judge Fina did not require the City Council to adhere to the Writ.   Id. ¶ 116.[10]   Defendant Kris Robinson represented the City in that lawsuit, and Defendant Joel Foreman represented Douglas, who moved to intervene in the matter.   Id. ¶¶ 119, 120. It appears Defendant Ron Williams, a Columbia County Commissioner, is

---

[10] The Court takes judicial notice of the fact that the defendants in Coker's state court action sought an extension of time to respond, and on December 13, 2021, filed a motion to dismiss the petition.   See Judge Fina Motion at 5 n.1, Ex. 2(b)-(d); U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 811 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage."); see also Fed. R. Evid. 201.

included in this lawsuit primarily because he did not object to Foreman's representation of Douglas.  Id. ¶ 125.[11]

On November 18, 2021, Defendant Todd Wilson published an editorial in the Lake City Reporter, also a Defendant, taking the position that the City Council should leave the seat vacant and wait for the next election.  Id. ¶ 105, Ex. F.  In addition, the Coalition published statements on its Facebook page urging the City Council not to seat Coker.  Id. ¶¶ 97, 100, Ex. E.  And Bowden published on social media that "he would take any and all actions necessary to prevent [Coker] from being seated . . . ."  Id. ¶ 114.  As of June 2, 2022, Coker had not been seated on the City Council.  Id. ¶ 117.  Indeed, the Court takes judicial notice of the fact that an election was held for the vacant seat in August of 2022, and Coker was not elected.  See Judge Fina Motion at 5 n.1, Ex. 3.[12] Based on the foregoing, Coker asserts that she has "suffered damages as a direct result of the Defendants' policies, practices and actions," including "monetary losses . . . ."  Id. ¶ 153.  Coker seeks money damages and punitive damages as

---

[11] According to Coker, Douglas was "an appointed member of an advisory board" to Defendant Columbia County Board of County Commissioners (the County).  Id. ¶ 93.  And Defendant Joel Foreman is the elected County attorney.  Id.

[12] Pursuant to Judge Fina's request, see Judge Fina Motion at 5 n.1, Ex. 3, the Court finds it appropriate to take judicial notice of this election and Coker's loss as these are facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  See Fed. R. Evid. 201(b)(2); see also Atkins v. Sarasota Cnty., 457 F. Supp. 3d 1226, 1236 n.8 (M.D. Fla. 2020) (taking judicial notice of election results).  Indeed, although Coker makes vague allegations of election misconduct in her Response, she does not dispute that according to the official results she lost her bid for the vacant City Council seat in the August 2022 election.  See Response to Judge Fina at 22-24.

to each count, and in several counts also requests injunctive relief "to prevent Defendants from condoning, participating, and encouraging this behavior in the future." <u>See</u>, <u>e.g.</u>, <u>id.</u> at 16, 20, 25, 38-39.

## IV.   Standing

### A. Counts VII and VIII: Voting Rights Act

In Counts VII and VIII of the Third Amended Complaint, Coker asserts claims under various statutory provisions of the Voting Rights Act (VRA).   In Count VII, Coker contends that the City Charter imposes a qualifying fee on candidates who seek a seat on the City Council and this fee places an "undue burden" on candidates and "denies disproportionately the rights of black candidates and more specifically female candidates." <u>See</u> TAC ¶¶ 80, 82.   She contends that this fee deprived or attempted to deprive her of a right secured under various provisions of the VRA.   <u>Id.</u> ¶ 86.   She asserts this claim against the City Council, Sikes, Tomi Brown in her official capacity as the Columbia County Supervisor of Elections, and the Florida Secretary of State.

In Count VIII, Coker alleges that on May 13, 2013, the City Council changed the zoning for District 13 "immediately following a District 13 election where a minority candidate . . . faced a non minority incumbent in District 13." <u>Id.</u> ¶¶ 88-89.   Coker appears to contend that this revision violates the VRA because it is a rezoning practice that has the effect "of reducing the representation of minorities and minority women from holding public [office] in

violation of constitutional liberty to due process of law." Id. ¶ 87.   She asserts this claim against the City Council alone.

The Defendants named in Counts VII and VIII move to dismiss these claims for a variety of reasons, including a lack of standing.   See City Motion at 19 (arguing that Coker fails to allege a particularized injury relevant to Counts VII and VIII); Secretary Motion at 3-5 (arguing that any injury is not traceable to, or redressable by, the Secretary); Brown Motion at 6-11 (arguing that Coker cannot establish any of the elements of standing as to Brown). Because the Court finds that Coker fails to allege facts showing that she has suffered a particularized injury from the purported wrongs alleged in these Counts, the Court will dismiss Counts VII and VIII for lack of standing.

Coker lacks standing to assert her VRA claims because she fails to allege the "foremost" of standing's requirements: an injury in fact.   See Trichell, 964 F.3d at 996.   As stated above, an injury in fact is "'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"   Id. (quoting Lujan, 504 U.S. at 560).   Significantly, "[a] particularized injury is one that 'affect[s] the plaintiff in a personal and individual way.'"   See Wood v. Raffensperger, 981 F.3d 1307, 1314 (11th Cir. 2020) (quoting Spokeo, 136 S. Ct. at 1548).   Upon review of the Third Amended Complaint, the Court can identify no discernible injury particular to Coker from the wrongdoing alleged in Counts VII and VIII.

As to Count VII, Coker does not affirmatively allege that <u>she</u> was charged a qualifying fee, much less when she was charged such a fee, by whom, or whether she paid it.   Coker vaguely asserts that the qualifying fee cannot be waived, <u>see</u> TAC ¶ 80, but does not allege whether <u>she</u> requested a waiver, to whom she made such a request, and whether it was denied.[13]   The Third Amended Complaint is devoid of any allegations that at any time Coker, herself, was unable to seek office due to the qualifying fee or that <u>she</u> faced an undue burden in seeking office because of the fee, as opposed to Black female candidates generally.   <u>See</u> TAC ¶¶ 82, 84.   Indeed, the facts alleged in the Third Amended Complaint pertain to Coker's successful selection for a vacant City Council seat.   Although the City Council later refused to seat her, Coker does not allege that her ability or inability to pay the qualifying fee had any connection to those events.[14]   And significantly, Coker does not allege that she intends to run for office in the future and will be subject to a qualifying fee at that time.   Likewise, as to Count VIII, Coker does not allege that she was injured by the rezoning that allegedly occurred in 2013, either as an impacted candidate or as a voter in that district.

---

[13]   Notably, Coker also fails to allege whether she attempted to qualify via the petition process in lieu of paying the qualifying fee as permitted by the City Charter.   <u>See</u> Lake City, Fla. Charter § 508.

[14]   While it appears Coker did later run for election to that seat, <u>see</u> <u>supra</u> note 12, there are no allegations in the Third Amended Complaint pertaining to that election or how Coker was able to qualify as a candidate.

Rather than allegations particular to her, Coker alleges undifferentiated, generalized grievances in Counts VII and VIII about the purportedly discriminatory effects of the City's election practices.  See, e.g., TAC ¶ 84 (alleging that the fee gives less opportunity to "minorities, and minority women"); id. ¶ 86 (alleging that the fee places an "undue burden on candidates"); id. ¶ 90 (alleging that the rezoning diminishes the voting rights of "any citizens of the United States").   But "a generalized grievance, 'no matter how sincere,' cannot support standing."  See Wood, 981 F.3d at 1314 (quoting Hollingsworth v. Perry, 570 U.S. 693, 706 (2013)).   While the actions alleged may have caused a cognizable injury, Coker has not placed herself among the injured.  See Lujan, 504 U.S. at 563 ("[T]he 'injury in fact' test . . . requires that the party seeking review be [her]self among the injured." (citation omitted)).   Absent any particularized injury to Coker, she lacks standing to challenge these allegedly discriminatory practices.   Accordingly, Counts VII and VIII are due to be dismissed without prejudice for lack of standing.

## B. Declaratory and Injunctive Relief[15]

The Court next turns to Coker's demands for declaratory and injunctive relief.   Coker begins most counts with a statement that she "alleges this action

---

[15] The Court notes that although some Defendants do challenge Coker's standing as to certain claims, no Defendant appears to challenge her standing to seek declaratory or injunctive relief in particular.   Nonetheless, as standing is a question of the Court's jurisdiction, it is not subject to waiver and the Court is obligated to consider it sua sponte whenever it may be lacking.   See Bischoff, 222 F.3d at 877-78.

for injunctive and declaratory relief . . . .”  See, e.g., id. ¶¶ 31, 56, 87.  In addition, as stated above, she ends several counts with a vague demand for injunctive relief.  However, to the extent Coker seeks such relief, she lacks standing to do so.  Significantly, “standing ‘is not dispensed in gross,’” meaning that a “‘plaintiff must demonstrate standing for each claim and for each form of relief that is sought.’”  See JW ex rel. Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1264-65 (11th Cir. 2018) (quoting Town of Chester, N.Y. v. Laroe Estates, 581 U.S. 433, 439 (2017)).  “‘[T]o demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that [s]he will suffer injury in the future.’”  Worthy v. City of Phenix City, Ala., 930 F.3d 1206, 1215 (11th Cir. 2019) (quoting Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999)).  “Logically, ‘a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.’”  Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (quoting Am. Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992)).

Here, Coker makes no attempt to allege a threat of future harm, much less a real and immediate threat.  Indeed, the harms described in the Third Amended Complaint are entirely in the past.  Notably, Coker does not seek an injunction requiring the City Council to seat her, and indeed, the vacant seat to

which she was allegedly appointed has now been filled through the election in August 2022.  See Judge Fina Motion, Ex. 3.  Nor does Coker allege that she intends to seek a seat on the City Council in the future, or even attend a City Council meeting.   In sum, prospective relief is not available because Coker has not alleged facts showing that she is likely to have another encounter with any Defendant under the same or similar circumstances that gave rise to her past injuries.  See Worthy, 930 F.3d at 1215; see also Mech v. Sch. Bd. of Palm Beach Cnty., No. 13-80437-CIV-MARRA, 2014 WL 12650695, at *2 (S.D. Fla. Oct. 17, 2014) (explaining that "[i]njuries sustained from 'past conduct' will not support a claim for declaratory relief absent a showing 'that such conduct has continued or will be repeated in the future'" (quoting Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985))).   The Court can do no more than speculate about whether or when the unique circumstances that led to this lawsuit could reoccur.   Because Coker has not pled sufficient facts to show any ongoing or future harm, she cannot pursue her claims insofar as she seeks declaratory or injunctive relief.  See Maisonet v. Comm'r, Ala. Dep't of Corr., No. 22-10023, 2022 WL 4283560, at *2 (11th Cir. Sept. 16, 2022) ("Because declaratory and injunctive relief necessarily do not redress past harm, standing for such claims requires a showing of an ongoing or future injury.").

V.    **Failure to State a Claim**

   A. Judge Fina

Next, the Court turns to Judge Fina's Motion as the claims against Judge Fina are subject to dismissal for reasons specific to him.   Coker asserts two claims against Judge Fina: conspiracy under 42 U.S.C. § 1985 (Count IX) and deprivation of her "right to seek justice" under 42 U.S.C. § 1983 (Count X). Significantly, Coker sues Judge Fina "in his official capacity as Judge of the Third Circuit Judicial Court."   See TAC at 2.   A lawsuit against a government official in his official capacity is equivalent to a suit against the entity he represents.   See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.   As such it is no different from a suit against the State itself." (internal citation omitted)).   In Florida, the state court system, and therefore a state court judge acting in his official capacity, are considered arms of the State of Florida.   See Uberoi v. Supreme Court of Florida, 819 F.3d 1311, 1313 (11th Cir. 2016); Badillo v. Thorpe, 158 F. App'x 208, 213-14 (11th Cir. 2005).   Thus, Coker's § 1983 and § 1985 claims against Judge Fina in his official capacity are treated as claims against the State of Florida.

Section 1983 allows claims against any "person," acting under color of law, who deprives another of his or her constitutional or statutory rights.   42

U.S.C. § 1983.   Similarly, § 1985 makes it unlawful for "two or more persons" to conspire to interfere with civil rights.   See 42 U.S.C. § 1985.   In Will, the Supreme Court addressed the question of whether a State can be considered a "person" for purposes of § 1983 liability, and ultimately decided that "a State is not a person within the meaning of § 1983." Will, 491 U.S. at 64.   The Will Court further determined that "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," as well as state officials sued in their official capacity are also not considered "persons" within the meaning of § 1983.   Id. at 70-71.   This same analysis applies to the term "person" in § 1985.   See Andela v. Univ. of Miami, 461 F. App'x 832, 837 (11th Cir. 2012); Hayden v. Ala. Dep't of Public Safety, 506 F. Supp. 2d 944, 949 (M.D. Ala. 2007) (collecting cases); see also Cuyler v. Scriven, No. 6:11-cv-87-MEF, 2011 WL 861709, at *3 (M.D. Fla. Mar. 9, 2011).   Because Judge Fina in his official capacity is considered an "arm of the state," and therefore, not a "person" under these statutes, he cannot be held liable for damages under § 1983 and § 1985.[16]

---

[16] Judge Fina correctly asserts that, in his official capacity, he is also immune from Coker's claims for damages under the Eleventh Amendment.   See Judge Fina Motion at 3; Uberoi, 819 F.3d at 1313-14; Badillo, 158 F. App'x at 213; see also Cuyler, 2011 WL 861709, at *2.   However, the Supreme Court has indicated that the question of whether a statute permits the cause of action it creates to be asserted against a State should be addressed before the question of whether Eleventh Amendment immunity applies.   See Vermont Agency of Natural Res. v. United States, 529 U.S. 765, 779-80 (2000).   As such, the Court finds it appropriate to dismiss the claims against Judge Fina on the basis that in his official capacity as an arm of the state of Florida he is not a "person" amenable to suit for damages under § 1983 or § 1985.   The Court acknowledges that there are exceptions to both of these principles that apply to requests for injunctive relief, but Coker does not specifically demand injunctive

Accordingly, Coker fails to state a claim for damages under § 1983 or § 1985 against Judge Fina in his official capacity as a state court judge, and as such, the claims against him are due to be dismissed.[17]

### B. Count IX: § 1985 Conspiracy

In the Third Amended Complaint, Coker asserts a claim for conspiracy under 42 U.S.C. § 1985 against all Defendants.   See TAC ¶¶ 91-92.[18]

---

relief as to Count X, see TAC at 66, and as to Count IX, Coker does not allege facts sufficient to support her standing to seek such relief, as explained above.

[17] Even if Coker intended to assert her claims for damages against Judge Fina in his individual capacity for actions taken under color of state law, her claims would still be subject to dismissal.   In his individual capacity, Judge Fina is entitled to absolute judicial immunity for the acts of which Coker complains.   Harris v. Deveaux, 780 F.2d 911, 914 (11th Cir. 1986); see also Stump v. Sparkman, 435 U.S. 349, 355–56 (1978); Wahl v. McIver, 773 F.2d 1169, 1172 (11th Cir. 1985).   The allegations against Judge Fina concern his handling of Coker's state court cases and there is nothing in the Third Amended Complaint that could support a finding that Judge Fina acted in the "clear absence of all jurisdiction."   See Harris, 780 F.2d at 914-16; see also Drees v. Ferguson, 396 F. App'x 656, 658 (11th Cir. 2010) ("A judge does not act in the 'clear absence of all jurisdiction' when he acts erroneously, maliciously, or in excess of his authority, but instead, only when he acts without subject-matter jurisdiction.").

[18] The Court notes that Defendants Williams, the County, Foreman, Brown, and the Secretary move to dismiss Coker's § 1985 conspiracy claim for lack of standing.   These Defendants argue that Coker fails to allege a particularized injury traceable to them.   See Williams Motion at 6-10; County Motion at 6-10; Foreman Motion at 6-10; Brown Motion at 6-11; Secretary Motion at 3-5.   Upon review, the Court finds sufficient allegations to demonstrate Coker's standing to assert the conspiracy claim at this stage in the proceedings. Coker alleges that Defendants conspired to prevent her from being seated as a City Council member after she was appointed to the position.   She alleges she suffered damages, including lost earnings, as a result.   Such injury would be redressable through a judgment compensating Coker for her alleged damages.   Although, for the reasons set forth below, Coker's vague and generalized allegations of conspiracy fail to state a claim, the Court finds that they are sufficient, at this stage in the proceedings, to establish her standing to assert this claim.   See Lujan, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e]' that general allegations embrace those specific facts that are necessary to support the claim.'" (citation omitted)).   Indeed, Defendants' arguments to the contrary appear to conflate the merits of Coker's claims with her standing to assert them.   See Moody v. Holman, 887 F.3d 1281, 1285 (11th Cir. 2018) ("The Supreme Court has cautioned that federal courts

Although the Court will dismiss this claim against Judge Fina for the reasons stated above, the Court next considers whether Coker has adequately stated a claim for § 1985 conspiracy against the remaining Defendants.[19]  For the reasons that follow, the answer is plainly that she has not.

As an initial matter, it is unclear under which subsection of § 1985 Coker seeks to proceed.  In the Third Amended Complaint, Coker quotes from the statutory language of subsection (1).  See TAC ¶ 92.  Section 1985(1) prohibits, in relevant part, conspiracies by two or more persons "to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof . . . ."  Significantly, "[t]he purpose of this section is to proscribe conspiracies that interfere with the performance of official duties by federal officers."  See Morast v. Lance, 807 F.2d 926, 929 (11th Cir. 1987) (emphasis added).  The allegations here do not involve a federal office, but rather an alleged conspiracy to prevent Coker from being seated on the City Council of a

---

'must not confuse weakness on the merits with absence of Article III standing.'" (quoting Ariz. St. Leg. v. Ariz. Indep. Redistricting Comm'n, 576 U.S. 787, 800 (2015)); see also Maisonet, 2022 WL 4283560, at *3.  Accordingly, the Court will proceed to address the merits of Coker's conspiracy claim.

[19] To the extent Coker asserts her § 1985 conspiracy claim against the "Florida Secretary of State, Division of Elections," see TAC at 2, 46, she does so in his official capacity and as such, the claim is due to be dismissed for the same reasons stated above as to Judge Fina.  The Secretary of State in his official capacity is an arm of the State of Florida and therefore not a "person" within the meaning of § 1985, and entitled to immunity under the Eleventh Amendment regardless.

municipality, Lake City, Florida.   As such, Coker cannot state a claim under § 1985(1).[20]

To the extent she asserts a claim for conspiracy under § 1985(3), as Defendants appear to believe, Coker must allege facts demonstrating:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

See Trawinski v. United Tech., 313 F.3d 1295, 1299 (11th Cir. 2002) (citation omitted).   Defendants assert that Coker fails to state a claim because she does not allege sufficient facts demonstrating a meeting of the minds between the alleged conspirators.   See, e.g., City Motion at 21-22; Coalition Motion at 2-3; Newspaper Motion at 2-3; Chamber Motion at 3; Robinson Motion at 3; Brown Motion at 17; Foreman Motion at 14; Williams Motion at 15; County Motion at 15.   This argument is well-taken.

"The core of a conspiracy claim is an agreement between the parties; thus, where the plaintiff fails to allege an agreement, the pleading is deficient and subject to dismissal."   See Mickens v. Tenth Judicial Circuit, 181 F. App'x 865, 876 (11th Cir. 2006).   Although Coker generally asserts that Defendants

---

[20] Section 1985(2) is plainly inapposite as it "applies only if the conspiracy attempted to prevent the witness from attending or testifying in federal court."   Id. at 930.

engaged in a conspiracy, her Third Amended Complaint is largely devoid of factual allegations from which one could plausibly infer the existence of an agreement between the numerous Defendants allegedly involved.   See Kearson v. S. Bell Tel. & Telegraph Co., 763 F.2d 405, 407 (11th Cir. 1985) ("In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint."); see also Mickens, 181 F. App'x at 876.   Nevertheless, even assuming the existence of an agreement between some Defendants, the Newspaper Defendants correctly argue that Coker cannot state a claim for conspiracy under § 1985(3) because she fails to allege any facts demonstrating invidious discriminatory intent.   See Newspaper Reply at 2.

Significantly, "a claim under § 1985(3) requires . . . proof of invidious discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private encroachment." Trawinski, 313 F.3d at 1299; Kearson, 763 F.2d at 407.   As such, to assert a conspiracy claim under § 1985(3), Coker must allege "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' behind the defendant's action taken in furtherance of the conspiracy."   See Dean v. Warren, 12 F.4th 1248, 1256 (11th Cir. 2021) (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993)).   Here, setting aside the question of whether Coker has any constitutionally protected right to hold

public office as she alleges, Coker does not contend that Defendants were motivated by invidious discriminatory intent.   Indeed, she does not include any allegations in Count IX concerning the motivations of the numerous Defendants involved in the alleged conspiracy.[21]   Reading the Third Amended Complaint as a whole, it appears that some Defendants may have been opposed to Coker due to her outspoken criticism of the City Council and its dealings with the Coalition Defendants.   But such motivations do not constitute "the requisite racial or class-based invidiously discriminatory intent" necessary to state a claim for conspiracy under § 1985(3).   See White v. Sch. Bd. of Hillsborough Cnty., 636 F. Supp. 2d 1272, 1278-79 (M.D. Fla. 2007).   In light of the foregoing, Count IX is due to be dismissed.[22]

---

[21] At most, Coker alleges that one Defendant spoke in favor of a different candidate because that candidate "was the only candidate that looked like someone who would garner support from the likes of a [sic] Amazon CEO Jeff Bezos." See TAC ¶ 102.   But this allegation alone falls far short of raising a plausible inference that Defendants were opposed to Coker due to class-based animus, especially given that Coker herself does not affirmatively draw this conclusion in the Third Amended Complaint.

[22] The Court notes that Defendant Stephen Douglas did not file his own motion to dismiss and has not appeared in this action. See Clerk's Entry of Default (Doc. 148), filed September 20, 2022.   The § 1985 conspiracy is the sole claim against Douglas.   Upon review, the Court finds that Douglas is similarly situated to the moving Defendants, and the claim against him is integrally related to the claims of the moving Defendants.   Indeed, to the extent Douglas took any actions ascribed to the conspiracy, he did so through his counsel, Defendant Foreman.   See TAC ¶¶ 93, 120, 122.   As such, the Court finds it appropriate to dismiss the conspiracy claim as to all Defendants, including Douglas.   See Courboin v. Scott, 596 F. App'x 729, 735 (11th Cir. 2014) ("A district court may on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); see also Savales v. Waters, Case No. 3:19-cv-523-J-32PDB, 2020 WL 1138259, at *7 n.3 (M.D. Fla. Mar. 9, 2020).   For this reason, Plaintiff's Motion for Default Judgment (Doc. 171) is due to be denied.

### C. Counts II and V: § 1983 "Right to Participate in Meetings" and "Right to Hold Public Office"

In Counts II and V, Coker asserts claims under § 1983 against the City Council; Councilmembers Hill, Sampson, Witt, and Jefferson; Deputy Supervisor of Elections and City Clerk Audrey Sikes; and City Attorney Fred Koberlein Jr. In the caption of the Third Amended Complaint, Coker names the individuals in both their personal and official capacities. See TAC at 1.[23] In Count II, Coker alleges that these Defendants deprived her of her "constitutional liberty interest into [sic] participate in democracy by attending public meetings without the threat of harm and intimidation to either herself or members of her family." Id. ¶ 31. In support, Coker asserts that at multiple City Council meetings Defendants failed to enforce the City Ordinance on decorum and instead allowed private citizens to "slander and defame" Coker publicly, and "to hurl threats to her and her minor children repeatedly . . . ." Id. ¶¶ 35-36, 38. According to Coker, the City Council allowed the private citizens to engage in this conduct "in retaliation" against Coker "for making

---

[23] As explained above, by naming these individuals in their personal and official capacities, Coker is asserting her claims against both the individuals and the city they represent. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Unlike states, municipalities are subject to liability under § 1983. See Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 690 (1978). But municipal liability claims raise separate issues that do not apply to claims against individuals. See Worthy, 930 F.3d at 1220 n.1 (noting the "morass" that usually accompanies § 1983 claims against municipalities). Nevertheless, the City Defendants do not raise any arguments specific to municipal liability, nor do they assert qualified immunity as a defense to the personal-capacity claims. As such, the Court does not distinguish between the municipal and individual claims in the analysis that follows.

protected disclosures." Id. ¶ 40.   In Count V, Coker alleges a deprivation of "her constitutional liberty interest in holding public office." Id. ¶ 56. Although in Count V, Coker does not include any allegations of Defendants' motivation, elsewhere in her pleading, Coker asserts that the City Council and Hill "denied [Coker] the public office after its selection on October 26, 2021 as retaliation for the protected disclosures of gross waste and abuse of public offices." Id. ¶ 37.

"The first task in a section 1983 suit is 'to isolate the precise constitutional violation with which [defendant] is charged.'" Jordan v. Mosley, 298 F. App'x 803, 805 (11th Cir. 2008) (quoting Baker v. McCollan, 443 U.S. 137, 140 (1979)).   In Counts II and V, Coker refers to her "constitutional liberty interest" and "fundamental right[s]," see TAC ¶¶ 31, 34, 56, such that she appears to be invoking substantive due process under the Fourteenth Amendment.   See McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) ("The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" (citation omitted)).   Indeed, the City Defendants interpret these claims as substantive due process claims and move to dismiss because Coker "has not alleged a fundamental substantive constitutional right . . . ." See City Motion at 15-16.   In her Response, Coker does not identify the constitutional provision under which she asserts these claims and does not otherwise directly respond

to the City's argument.  <u>See</u> Response to City Motion at 7.  Instead, Coker asserts that in Count II she alleges an interference with her "right to participate in public meetings," and in Count V she alleges a violation of her "right to hold public office . . . ."  <u>Id.</u>

The City Defendants are correct that Coker fails to state a substantive due process claim under the Fourteenth Amendment.  However, the Court does not view these claims as arising under the Fourteenth Amendment. Generally, Coker alleges that government officials retaliated against her for criticizing the City Council.  This conduct, to the extent it implicates the Constitution at all, is governed by the First Amendment.  Significantly, where a different Amendment "provides an explicit textual source of constitutional protection against the sort of conduct complained of, that Amendment—not the more generalized notion of substantive due process under the Fourteenth Amendment—is the guide for analyzing the claim."  <u>See</u> <u>Jordan</u>, 298 F. App'x at 805; <u>see also</u> <u>Echols v. Lawton</u>, 913 F.3d 1313, 1326 (11th Cir. 2019); <u>Velez v. Levy</u>, 401 F.3d 75, 94 (2d Cir. 2005).  Thus, regardless of Coker's vague references to liberty interests and fundamental rights, the Court is required to analyze the claim for "what it actually is, not for what [Coker] would have it be."  <u>See</u> <u>McKinney</u>, 20 F.3d at 1560 (giving no weight to the label the plaintiff gave his claim because the court's responsibility "is to examine [the plaintiff's]

cause of action for what it actually is, not for what [the plaintiff] would have it be").[24]

In light of the foregoing, the Court will analyze whether Coker has stated a claim for First Amendment retaliation. "To state a claim for First Amendment retaliation, a plaintiff must allege that [she] engaged in protected speech, that the official's conduct adversely affected the protected speech, and that a causal connection exists between the speech and the official's retaliatory conduct." See Echols, 913 F.3d at 1320. As to the "adverse effect" prong of the analysis, courts consider "whether [the official's] alleged conduct 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights . . . .'" Id. (quoting Bailey v. Wheeler, 843 F.3d 473, 481 (11th Cir. 2016)). Significantly, the test is an objective one and trivial injuries, or those that "amount to no more than de minimis inconvenience in the exercise of First Amendment rights" are insufficient. See Bennett v. Hendrix, 423 F.3d 1247, 1252 (11th Cir. 2005). To demonstrate a causal connection, Coker must allege facts giving rise to a plausible inference that the City Defendants "were

---

[24] Notably, Coker's failure to correctly recognize the nature of her claims is not a basis for dismissal. See Torres v. Miami-Dade Cnty., Fla., 734 F. App'x 688, 691-92 (11th Cir. 2018) (explaining that the liberal construction afforded pro se litigants "means that federal courts must sometimes look beyond the labels used in a pro se party's complaint and focus on the content and substance of the allegations"); see also Johnson v. City of Shelby, Miss., 574 U.S. 10, 11 (2014) (holding that the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

subjectively motivated" to engage in the adverse action because of Coker's protected speech.   See Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008). Upon careful consideration, the Court finds that Coker's allegations are insufficient to state a claim for First Amendment retaliation.

In Count II, Coker alleges that at "multiple meetings" over the span of nearly a year, the Councilmembers "sat quietly" while private citizens "hurl[ed] threats" at Coker and her children.   See TAC ¶ 36. Coker further asserts that the City Council allowed these same private citizens to violate the decorum policy at public meetings and "defame, threaten, harass, and intimidate" Coker "in retaliation for making protected disclosures."   Id. ¶ 40.   Notably, the Court questions whether the City Defendants' mere inaction in failing to enforce the decorum policy is sufficient to support a claim for First Amendment retaliation. See L.H. v. Pittston Area Sch. Dist., 666 F. App'x 213, 216 (3d Cir. 2016) ("[A]llegations of inaction are not sufficient to establish an actionable claim for retaliation.").   Regardless, even if inaction could support a retaliation claim under some circumstances, the allegations here are inadequate.   Significantly, in Count II, Coker does not allege what was said that she contends was threatening or defamatory, nor does she allege the frequency with which such comments were made at any given meeting.   Setting aside her merely conclusory descriptions of the purported harassment, which are not entitled to

a presumption of truth, Coker has not alleged sufficient <u>facts</u> from which the Court can infer anything more than de minimis harm.[25]

Even assuming Coker's allegations are sufficient to demonstrate the requisite adverse effect, Coker fails to include factual allegations from which one can infer any causal connection between her protected conduct and the failure to enforce the decorum policy.  Although close temporal proximity can give rise to an inference of causation, <u>see</u> <u>Ranize v. Town of Lady Lake, Fla.</u>, No. 5:11–cv–646–Oc–32TBS, 2012 WL 4856749, at *3 (M.D. Fla. Oct. 12, 2012), here, the timing of the events alleged in the Third Amended Complaint undermines any causal inference.  Significantly, Coker alleges that the City Council failed to enforce the decorum policy at meetings occurring <u>before</u> the date of her first alleged "protected disclosures."  <u>See</u> TAC ¶ 36 (alleging a failure to enforce the policy beginning in December 2020) and ¶ 18 (alleging a disclosure on January 4, 2021, the earliest identifiable date of any alleged disclosure).  Moreover, Coker does not assert any facts connecting the City Council's failure to enforce the decorum policy to her specifically.  For example, Coker does not assert that the City Council had previously enforced the policy

_____

[25] Although the standard for "adverse effect" is an objective one, it is notable that Coker does not allege that she was in any way deterred from attending meetings or speaking out as a result of the City Council's failure to enforce the decorum policy.  <u>See</u> <u>Bethel v. Town of Loxley</u>, 221 F. App'x 812, 813-14 (11th Cir. 2006).  To the contrary, as set forth in the Third Amended Complaint, it appears Coker continued to attend meetings regularly and to make disclosures for months.

and stopped when she began making disclosures, or that the City Council enforced the policy as to other individuals but not her.    Coker's allegations are simply too vague and conclusory to give rise to a plausible causal connection between her "disclosures" and the City Council's failure to enforce the decorum policy.    As such, Count II is due to be dismissed for failure to state a claim.

Similarly, as to Count V, the sequence of events between Coker's "disclosures" and the City Council's refusal to seat her undermines any inference of retaliation. [26]    Coker alleges that she began making these "disclosures" in January of 2021.  See TAC ¶ 18.  The last "disclosure" she alleges with an identifiable date occurred in June of 2021.  See TAC ¶ 22.  The City Council voted to appoint Coker to the vacant seat months later, on October 26, 2021.  See TAC ¶ 61.a.    Thus, it was well after Coker's disclosures that the City Council voted to appoint her to the vacant seat, undermining any inference

---

[26] The Court notes that, in Count V, Coker does not actually allege that the refusal to seat her was retaliatory.  See TAC ¶¶ 56-61.  Rather, that allegation is located in Count II. See TAC ¶ 37.  As such, the specific nature of the claim Coker intends to assert in Count V is difficult to discern.  In an abundance of caution, and in recognition of her pro se status, the Court considers whether Coker has alleged sufficient facts to state a claim for First Amendment retaliation in Count V.  However, to the extent Coker asserts this claim based on her substantive due process rights under the Fourteenth Amendment, her claim fails for the reasons discussed in the next section.  Coker's legal interest in holding the City Council seat to which she was appointed, to the extent she had one, is governed by state law and City ordinance.  It does not implicate substantive due process.  See Snowden v. Hughes, 321 U.S. 1, 7 (1944) ("[A]n unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause."); see also Houchens v. Beshear, 850 F. App'x 340, 343-44 (6th Cir. 2021) ("The Supreme Court has not included the right to maintain public employment as a substantive due process right specifically protected under the Fourteenth Amendment. . . . .  This line of reasoning . . . naturally extends from public employees to political appointees.")

that it was these disclosures that then motivated the same City Council to deny her the seat a few days later.  Significantly, Coker does not allege that she engaged in any protected speech between the date of her appointment and the date the City Council changed course and refused to seat her.  Indeed, Coker alleges that Hill's stated reason for changing his vote was because he learned information about Coker's "past."  Id. ¶ 67.  According to the newspaper article embedded in the Third Amended Complaint, the information concerned Coker's history of filing for bankruptcy and a prior arrest.  See id. ¶ 104.  Coker does not allege that Hill's stated reason was a pretext for a retaliatory motive, and his decision to reverse course based on this information does not implicate the First Amendment.  Because Coker fails to allege facts demonstrating any causal connection between her disclosures and the City Defendants' refusal to seat her on the Council, Count V is due to be dismissed as well.

### D. Count VI: § 1983 Due Process

In Count VI, Coker alleges that Defendants Sampson, Witt, Jefferson, Hill, Sikes, and Koberlein violated her constitutional right to due process when they refused to seat her on the City Council without following the procedures set forth in the City Charter for removing a Councilmember from office.  See TAC ¶¶ 62, 67-68.  Specifically, Coker alleges that these Defendants "remove[d]" Coker "from her duly appointed official capacity," without following

the process required under the City Charter.  <u>See</u> TAC ¶ 68.   Thus, Coker's

claim is that by refusing to seat Coker on the City Council, after appointing her

to the position and receiving her "Oath of Office," these Defendants deprived

Coker of her seat on the City Council without providing her constitutionally

adequate process.   As such, it appears Coker is asserting a procedural due

process claim under the Fourteenth Amendment.   "A Section 1983 procedural

due process claim requires a plaintiff to prove three elements: '(1) a deprivation

of a constitutionally-protected liberty or property interest; (2) state action; and

(3) constitutionally-inadequate process.'"   <u>See</u> <u>Catron v. City of St. Petersburg</u>,

658 F.3d 1260, 1266 (11th Cir. 2011) (quoting <u>Grayden v. Rhodes</u>, 345 F.3d

1225, 1232 (11th Cir. 2003)).   Significantly, the type of interest implicated

impacts the type of process constitutionally required.   <u>See</u> <u>Campbell v. Pierce</u>

<u>Cnty., Ga.</u>, 741 F.2d 1342, 1344-45 (11th Cir. 1984).

The City Defendants appear to view Coker's procedural due process claim

as pertaining to the deprivation of a constitutionally-protected <u>liberty</u> interest.

<u>See</u> City Motion at 15; <u>see</u> <u>also</u> TAC ¶ 62 (alleging a deprivation of her

"constitutional liberty to due process of law").   As such, the City asserts that

Coker cannot assert a procedural due process claim because post-deprivation

state court remedies were available.   <u>See</u> City Motion at 16 (citing <u>Cotton v.</u>

<u>Jackson</u>, 216 F.3d 1328 (11th Cir. 2000)).   And indeed, Coker alleges in the

Third Amended Complaint that she utilized at least one available state court

process by filing her petition for writ of mandamus.   See TAC ¶ 61.i., Ex. D.

Coker does not respond to these arguments or otherwise dispute the City

Defendants' characterization of her claim.   While the Court questions whether

Coker is actually asserting the deprivation of a liberty interest in Count VI, to

the extent she is, the City Defendants are correct that such a claim is due to be

dismissed given the availability of state court remedies.   See Cotton, 216 F.3d

at 1332-33.

Although Coker fails to state a procedural due process claim based on the

deprivation of a liberty interest, the Court also considers whether Coker has

properly alleged such a claim premised on the deprivation of a constitutionally

protected property interest, i.e., the public office to which she believes she was

entitled.   Significantly, "[w]here a property interest is at stake, courts have

usually held that a pre-deprivation hearing may be required."   See Campbell,

741 F.2d at 1344 (emphasis added); see also Galbreath v. Hale Cnty. Ala.

Comm'n, 754 F. App'x 820, 827-28 (11th Cir. 2018).   However, Coker's claim

fails under this analysis as well because, as noted above, the Supreme Court

has determined that the "unlawful denial by state action of a right to state

political office is not a denial of a right of property or of liberty secured by the

due process clause."   See Snowden v. Hughes, 321 U.S. 1, 7 (1944); see also

Taylor v. Beckham, 178 U.S. 548, 576-77 (1900) ("The view that public office is

not property has been generally entertained in this country. . . . The decisions

are numerous to the effect that public offices are mere agencies or trusts, and not property as such."); Houchens v. Beshear, 850 F. App'x 340, 343 (6th Cir. 2021) ("[P]ublic officers do not have a property interest in their positions."); Velez, 401 F.3d at 86-87.   Indeed, the Florida Constitution explicitly states that "[a] public office is a public trust."   See Fla. Const. art. II, sec. 8; see also Israel v. DeSantis, No. 4:19cv576-MW/MAF, 2020 WL 2129450, at *9-10 (N.D. Fla. May 5, 2020) ("In Florida law, as in federal law, public service is a privilege, not a right.").   As such, even assuming Coker was entitled to be seated on the City Council as she contends, the purportedly wrongful deprivation of this seat cannot form the basis of a procedural due process claim.   Accordingly, Count VI is due to be dismissed as well.

## VI.   State Claims

Having determined that Coker's federal claims are due to be dismissed, the Court next considers whether to continue to exercise supplemental jurisdiction over the remaining state law claims.   In Counts I, III, IV, and XI, Coker asserts claims for relief under Florida state law.   "The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court."   Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004).   Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).   Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006).   However, upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience in deciding whether or not to exercise that jurisdiction." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994).   Upon due consideration, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over Coker's state law claims.   Thus, the Court declines to exercise supplemental jurisdiction over these claims.

For the reasons set forth above, the Court has determined that the federal claims in Counts II and V-X of the Third Amended Complaint, over which the Court has original jurisdiction, are due to be dismissed.   What remains are uniquely state law claims that are best addressed by the state courts. Although this case has been pending for some time, it has not progressed beyond

the motion to dismiss stage.   The Court has not issued any dispositive rulings pertaining to the state law claims, and discovery has been stayed since December 2, 2022.   See Order (Doc. 169).   Thus, the procedural posture of the case weighs in favor of declining jurisdiction to allow the case to proceed fully in state court.   Moreover, when, as here, the federal claims are dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to dismiss any remaining state claims."   Raney, 370 F.3d at 1089; Busse v. Lee Cnty., 317 F. App'x 968, 973-74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims.   28 U.S.C. § 1367(c)(3).   Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial.").   See also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine- judicial economy, convenience, fairness, and comity- will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court declines to exercise supplemental jurisdiction over Coker's remaining state law claims.   Accordingly, Counts I,

III, IV, and XI of the Third Amended Complaint are due to be dismissed without prejudice to refiling in the appropriate state court.[27]

In light of the foregoing, it is

**ORDERED:**

1. The Motions to Dismiss (Docs. 15, 49, 53, 78, 79, 80, 81, 94, 101, 102, 110, and 131) are **GRANTED, in part,** to the extent set forth in this Order, and otherwise **DENIED.**

2. The VRA claims set forth in Counts VII and VIII are **DISMISSED without prejudice** for lack of standing.

3. To the extent Coker seeks declaratory and injunctive relief in the various counts of the Third Amended Complaint, her claims for such relief are **DISMISSED without prejudice** for lack of standing.

---

[27] The Court notes that Coker will suffer no harm from the Court's decision to decline supplemental jurisdiction because federal law provides for the tolling of the state limitations period while a state claim is pending in federal court. Specifically, 28 U.S.C. § 1367(d) provides that:

> [t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

As such, even if the statute of limitations has otherwise run on Coker's state law claims, Coker has at least thirty days to refile her claims in state court. See Dukes v. Georgia, 212 F. App'x 916, 917-18 (11th Cir. 2006); Dusek v. JPMorgan Chase & Co., 132 F. Supp. 3d 1330, 1354 n.18 (M.D. Fla. 2015).

4. The claims for damages set forth in Counts II, V, VI, IX, and X are **DISMISSED.**

5. The state law claims set forth in Counts I, III, IV, and XI are **DISMISSED without prejudice** to refiling in the appropriate state court.

6. Plaintiff's Motion for Default Judgment (Doc. 171) is **DENIED without prejudice**.

7. The Clerk of the Court is directed to enter judgment, terminate all pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 2nd day of March, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties