[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 23-11160

Non-Argument Calendar

---

BEFAITHFUL COKER,

Plaintiff-Appellant,

*versus*

SLYVESTER WARREN, III,
individually,
JUSTICE AND EQUALITY COALITION, INCORPORATED,
collectively,
CITY COUNCIL OF LAKE CITY FLORIDA,
individually and collectively,
JAKE HILL,
individually and in his official capacity,
EUGENE JEFFERSON,
individually and in his official capacity, et al.,

Defendants-Appellees,

---

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:22-cv-00518-MMH-LLL

---

Before JORDAN, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

Befaithful Coker, proceeding *pro se*, appeals the district court's dismissal of her civil suit that brought state and federal claims against numerous defendants.[1] *Coker v. Warren*, 660 F. Supp. 3d 1308 (M.D. Fla. 2023). On appeal, Coker contests several of the

---

[1] We write only for the parties so, as to any issues that we do not mention explicitly, we affirm without discussion. For reference, Coker's third amended complaint brought 11 Counts (Counts I through IX) against the following 24 defendants: (1) Sylvester Warren, III; (2) the Justice and Equality Coalition, Inc; (3) Audrey Sikes, City Clerk of Lake City, Florida and Deputy Supervisor of Elections for Columbia County; (4) the City Council of Lake City ("the City Council"); (5) Christopher Todd Sampson; (6) Jake Hill; (7) Eugene Jefferson; (8) Stephen Witt; (9) Fred Koberlein, Jr.; (10) Kris Bradshaw Robinson; (11) Tomi Brown, Columbia County Supervisor of Elections; (12) Stephen Douglas; (13) Joel Foreman, Attorney for Columbia County Board of County Commissioners and for Columbia County Supervisor of Elections; (14) the Columbia County Board of County Commissioners; (15) Ronald Williams; (16) Northeast Florida Newspaper, LLC; (17) Todd Wilson; (18) the Lake City, Columbia County Chamber of Commerce; (19) Steve Smith; (20) Glennel Bowden; (21) Vanessa George; (22) Nathan Gambles, III; (23) David Fina, Judge of the Third Circuit Court of Florida; and (24) the Florida Secretary of State, Division of Elections.

district court's jurisdictional and substantive rulings, but she fails to preserve challenges to several other rulings of the district court. After careful review, we affirm.

## I. FACTUAL BACKGROUND

We begin by summarizing the factual allegations of Coker's operative complaint. In doing so, we accept, as we must, "the complaint's allegations as true and construe them in the light most favorable to" Coker. *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024).

Coker, a community activist and volunteer in Lake City, Florida, made several "protected disclosures" and complaints to government officials and to "state and federal agencies." These disclosures concerned, among other matters, the "misuse of taxpayers funds, abuses of power and political position, and threatening and intimidating practices of members of the [Lake City] City Council" and other defendants. For example, in January 2021, Coker made a public disclosure to the City Council that councilmember Jake Hill had committed "gross waste and abuse of duty" by advocating for a lease negotiation that violated the municipal charter and that represented a conflict of interest.

In later "public disclosures," Coker claimed another councilmember, Fred Koberlein, Jr., had engaged in negotiations with other defendants "without using established financial policies," leading to "a gross waste of funds," also in violation of the municipal charter. She also claimed that councilmembers Hill and Eugene Jefferson "abused their office" by encouraging "the Third Circuit

Judicial Court not to prosecute" another defendant, Sylvester Warren, for pending charges in state court and for encouraging his early release from federal probation. In June 2021, Coker made a "public disclosure" to the City Council about "suspected criminal activity by business owners" who were not in compliance with the municipal charter, including businesses owned by several defendants. Another "public disclosure" stated that Koberlein failed to inform the City Council about an "improperly called" special meeting held to terminate a city manager and reinstate a terminated and ineligible Human Resources director, and she claimed the City Council failed to follow its own hiring policies and practices. One "protected disclosure" notified various defendants that the City Council "was placing members of the public" who had been convicted of felonies "on public-funded boards" despite policies preventing people convicted of felonies from serving in those roles. She also informed defendants that members of the community were improperly receiving taxpayer funds, and money was going to organizations where "convicted sex offenders" sat on the board.

Coker asserted that, in retaliation for her "protected disclosures," certain defendants defamed her at City Council meetings, published libelous and defamatory statements about her on social media, and encouraged threats to be made against her and her children. Coker sought "safeguards" from various defendants and law enforcement but received none.

Coker also alleged that the defendants retaliatorily conspired to deny her positions in city and local government. For

example, she explained that, after Clerk Audry Sikes informed advisory councilmember Bowden of a protected disclosure, Glennel Bowden "publicize[d] on social media his commitment to use all efforts to prevent" her from holding public office. Coker applied to fill a vacancy on the Planning and Zoning Board in March 2020, but her application was delayed. Then, the City Council denied her application because she had been appointed, in October 2021, to fill a vacancy on the City Council. Further, Coker contended that various defendants blocked her from filling that seat on the City Council, even though she was selected and eligible. After she was denied the seat, Coker petitioned for mandamus in the Third Circuit Judicial Court of Columbia County. Even though she had been appointed, several defendants presented a resolution to prevent her from being seated. Coker contended that, as a matter of law, she was a member of the City Council, and the Council had no authority to bar her from being seated. She asserted that the actions of each member were inconsistent with the municipal charter and the U.S. and Florida Constitutions.

Coker also alleged that several defendants prevented her from attending future public meetings by intimidating and threatening her. Even though the City Council had a decorum policy, it allowed participants to "slander and defame" her at meetings while those meetings were broadcast live over the internet. Other councilmembers listened and failed to act as defendants "hurl[ed] threats" against her and her minor children. Coker identified several false and malicious statements that caused her reputational harm. For example, Coker alleged that councilman Sampson

"maliciously" made false and reckless reports "that [Coker had] caused a previous Georgia residence to be burned to relocate to Florida," in order to discourage voters from voting for Coker.

Coker's operative complaint also included challenges to several of the City Council's procedures. First, she asserted that the Council charged a qualification fee under Section 506 of the municipal charter, requiring any candidate who seeks to be a councilmember for District 14 to pay a fee of $1,065.85. Second, she alleged that the City Council had "a practice of rezoning" that moved a candidate from a district of incumbents which had "an effect of reducing the representation of minorities and minority women from holding public" office.

In Count IX, of particular relevance to our discussion here, Coker alleged that the defendants had engaged in a conspiracy under 42 U.S.C. § 1985 to prevent her from being seated on the City Council. As part of this Count, Coker alleged the City Council tried to secretly appoint Douglas to the vacant seat before Coker's selection. Douglas sat on an advisory board of the Columbia County Board of County Commissioners, which Foreman represented. Sampson, Koberlein, and Sikes communicated about preventing Coker from taking the vacant seat and Sikes then spread that communication to Jefferson, Hill, and Witt. The City Council allowed other defendants' "public slander" at a November 1st City Council meeting to be aired online. At the same meeting, the Chamber of Commerce, represented by Smith, voiced its support for Douglas to fill the vacant seat. After Coker sought a writ of mandamus to

be seated on the City Council, the initially assigned judge—Judge Jackson—entered an Order Nisi in Prohibition but then transferred the case to Judge Fina who, Coker alleged, had a conflict of interest in the case which he did not disclose. Judge Fina then failed to enforce Judge Jackson's order to seat her in her rightful position on the City Council. Coker maintained that many defendants submitted fraudulent and intentionally misleading filings in the case to delay a decision and to cause her duress. She also contended that Judge Fina's rulings were improper and violated his duties.

Following the Council's initial vote to seat Coker, Northeast Florida Newspaper, LLC ran an article entitled "City council goes with Coker." After the Council chose not to grant Coker the seat, the newspaper ran an article entitled "No seat for Coker either." Coker's operative complaint also referenced an opinion piece in the newspaper, written by Todd Wilson, which advised the City Council not to seat Coker. Coker asserted that the articles had portrayed her in a negative and false light to delay her appointment and cause her embarrassment and humiliation.

## II. PROCEDURAL HISTORY

Coker filed her initial complaint in May 2022. Shortly after that, she filed an amended complaint. The district court struck Coker's amended complaint as an impermissible "shotgun pleading." Coker filed a second, and then third amended complaint—the operative complaint—that sought damages, injunctive and declaratory relief, and a jury trial. All the defendants except for Douglas moved to dismiss the third amended complaint. Coker moved

for default judgment against Douglas for failure to respond, and she opposed the motions to dismiss.[2]

The district court granted the motions to dismiss in a 46-page order, for reasons we explain more below. *See Coker*, 660 F. Supp. 3d at 1315-36. The court dismissed Counts VII and VIII, as well as Coker's claims for declaratory and injunctive relief, without prejudice for lack of standing. It dismissed the claims for damages in Counts II, V, VI, IX, and X for failure to state a claim and it dismissed the state-law claims in Counts I, III, IV, and XI without prejudice, declining to exercise supplemental jurisdiction over those Counts. It also denied Coker's motion for default judgment against Douglas. Coker timely appealed.

## III. STANDARDS OF REVIEW

We resolve jurisdictional issues before we address the merits of the underlying claims, *see Friends of the Everglades v. E.P.A.*, 699 F.3d 1280, 1288–89 (11th Cir. 2012), and we review subject-matter jurisdiction questions *de novo*, *Behr v. Campbell*, 8 F.4th 1206, 1209 (11th Cir. 2021). That said, "[w]e review the district court's decision not to exercise supplemental jurisdiction for abuse of discretion." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 738

---

[2] In her filings in opposition to the motions to dismiss, Coker included more allegations that were not part of her operative complaint. The district court declined to consider those allegations and did not err in doing so. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 705 (11th Cir. 2016) ("[A plaintiff] cannot . . . use h[er] briefing to add new allegations and argue that those new assertions support h[er] cause of action.").

(11th Cir. 2006). We review a district court's dismissal of a complaint for failure to state a claim *de novo*. *Watts v. Joggers Run Prop. Owners Ass'n*, 133 F.4th 1032, 1038–39 (11th Cir. 2025). We also review questions of law *de novo*. *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006).

Additionally, "[w]e review the denial of a motion for a default judgment for abuse of discretion." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002). "Default is to be used sparingly," as we have a general preference that cases be heard on the merits. *Id.* at 1316–17; *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

In applying these principles, we hold *pro se* pleadings to a less stringent standard and liberally construe them. *Campbell v. Air Jam., Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). Even so, we will not "serve as *de facto* counsel for a party" nor "rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168–69 (quoting *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## IV. DISCUSSION

Coker appeals the district court's dismissal of her complaint for lack of standing, lack of jurisdiction, and failure to state a claim. She also contends she was entitled to a jury trial and a default

judgment as to Douglas. We review the court's rulings on these issues in turn below.[3]

### *A. The District Court properly dismissed Counts VII and VIII and Coker's requests for Prospective Relief for lack of Article III Standing*

Read liberally, Coker's brief challenges the district court's conclusion that she lacked standing to bring several of her claims.[4] "[T]o enjoy standing to sue in a federal court[,]" Coker needed to make three showings for each claim: "(i) that [s]he 'suffered an injury in fact that is concrete, particularized, and actual or imminent'; (ii) that [the defendants] 'likely caused' h[er] injury; and (iii) that a favorable judicial decision can likely redress h[er] injury." *Polelle v.*

---

[3] Coker has abandoned challenges to several of the district court's rulings by failing to challenge them on appeal. *See Irwin v. Hawk*, 40 F.3d 347, 347 n.1 (11th Cir. 1994); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). First, Coker does not address the district court's dismissal of Count II and Count V against the City Council, Hill, Sampson, Witt, Jefferson, Sikes, and Koberlein. *Sapuppo*, 739 F.3d at 681. Further, as to Count X and the portion of Count IX brought against Judge Fina, the district court dismissed the counts on multiple, independent grounds, thus, to reverse, Coker had to "convince us that every stated ground for the judgment against h[er] [wa]s incorrect." *Id.* at 680. Still, Coker has not challenged the district court's conclusions that Judge Fina was immune from suit under the Eleventh Amendment and was entitled to absolute judicial immunity. Accordingly, we affirm the district court's dismissal of these portions of her suit.

[4] Admittedly, Coker's brief is not all that clear about this issue, but she is proceeding *pro se*, *Campbell*, 760 F.3d at 1168, and generally, "parties cannot waive [or forfeit] subject matter jurisdiction." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). Accordingly, we address the standing issues.

*Fla. Sec'y of State*, 131 F.4th 1201, 1208 (11th Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). All three requirements were necessary, and the failure to establish any of them deprives a federal court of jurisdiction. *See id.* To be "particularized," an injury must be "'individual and personal in nature'" rather than a mere "generalized grievance[] that anybody could pursue." *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). Coker's arguments about standing implicate the district court's dismissal of Counts VII and VIII of her complaint, as well as her claims for prospective (declaratory and injunctive) relief in each count.

First, as to Count VII, Coker alleged that the City Council, Sikes, Brown, and the Florida Secretary of State violated the Voting Rights Act ("VRA"), 52 U.S.C. §§ 10301, 10304, & 10308, by requiring candidates for the City Council to pay a qualifying fee. She contended that this fee limited the opportunities of minorities to participate in the political process, and she requested monetary damages and injunctive relief, presumably against the imposition of the fee going forward. The district court held that Coker had not asserted an injury in fact because she did not allege that she was charged a qualifying fee, who charged her that fee, that she requested a waiver of the fee, or that she planned to run for office (and incur the fee) in the future. Rather, it concluded that Coker complained of a generalized harm to all Black female candidates and that the fee was not alleged to be related to any of the other facts alleged in the amended complaint. Taking as true Coker's contentions in Count VII regarding the unlawfulness of the candidate fee—Coker did not allege that she was charged that fee or

intended to participate as a candidate subjected to the fee, and she therefore did not allege an injury "individual and personal in nature." *Reynolds*, 377 U.S. at 561. Accordingly, we affirm on this issue.

Second, in Count VIII, Coker alleged that the City Council violated the VRA, 52 U.S.C. §§ 10301, 10304, and 10308, by rezoning District 13 to reduce the voting power of minorities. She again sought monetary damages and injunctive relief. The district court held Coker did not assert an injury in fact because she failed to allege that she was injured by the rezoning in 2013, either as a candidate or as a voter in that district. As with her allegations in Count VII, Coker did not allege that she intended to participate as a candidate or a voter affected by the 2013 rezoning and, therefore, she also did not allege an injury "individual and personal in nature" for Count VIII. *Reynolds*, 377 U.S. at 561. Thus, we affirm on this issue as well.

Finally, in each of her other counts—Counts I through VII and IX through XI—Coker sought injunctive and declaratory relief in addition to monetary relief. The district court held Coker's complaint alleged harms that were "entirely in the past," and therefore insufficient to show standing for prospective relief. When a plaintiff seeks declaratory or injunctive relief, she must show "a real and immediate threat of a future harm." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006); *see also Food & Drug. Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("And when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish

a sufficient likelihood of future injury."). "[I]t follows that '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Elend*, 471 F.3d at 1207 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Here, Coker's amended complaint only addressed past events and there were no allegations that she would be exposed to the same illegal conduct again. Coker did not allege that she intends to seek a seat on the City Council in the future or attend a City Council meeting. Nor did she allege that she will be forced to pay, as relevant to her VRA claims, any fees going forward or that she would be a voter or candidate impacted by the current voting maps. As the district court explained, the amended complaint does not contain "facts showing that she is likely to have another encounter with any Defendant under the same or similar circumstances that gave rise to her past injuries." *Coker*, 660 F. Supp. 3d at 1326.

In sum, the district court did not err in dismissing, without prejudice, Coker's claims for prospective relief and her claims under the Voting Rights Act. These portions of Coker's operative complaint did not establish that she had an "injury in fact" as opposed to "only a general legal, moral, ideological, or policy objection to" the defendants alleged actions. *All. for Hippocratic Med.*, 602 U.S. at 381. Because Coker's operative complaint did not establish that she had standing in these respects, the court lacked jurisdiction over them and properly dismissed them without prejudice. *See*

*Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024) ("[T]he jurisdictional nature of the dismissal requires it to be entered without prejudice.").

### *B. The District Court did not abuse its discretion in declining to exercise Supplemental Jurisdiction over Coker's state law claims in Counts I, III, IV, and XI*

The district court declined to exercise supplemental jurisdiction over Coker's state-law claims to serve judicial economy. It explained that these aspects of Coker's suit presented "uniquely state[-]law claims that [were] best addressed by the state courts" and it noted that, although the case had been pending for some time, it remained in the motion to dismiss stage and the court had not issued any dispositive rulings as to the state-law claims. On appeal, Coker contends the district court should not have dismissed these claims because they were connected to her federal claims, and she makes arguments about the merits of these claims which the district court did not reach.

"[T]he abuse of discretion standard allows 'a range of choice for the district court, so long as that choice does not constitute a clear error of judgment.'" *Rasbury v. IRS (In re Rasbury)*, 24 F.3d 159, 168 (11th Cir. 1994) (quoting *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989)); *see Crosby v. Paulk*, 187 F.3d 1339, 1359 (11th Cir. 1999) ("In making" a supplemental jurisdiction "determination, [a] judge should 'take into account concerns of comity, judicial economy, convenience, fairness, and the like.'" (quoting *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 257 (1st Cir. 1996))).

The relevant factors here weighed against exercising supplemental jurisdiction, as the district court had dismissed all the claims over which it had jurisdiction.[5] Accordingly, the district court weighed appropriate factors and reached an appropriate conclusion, so we affirm. *Parker*, 468 F.3d at 738.

### *C. Coker Failed to State a Claim for Conspiracy in Count IX*

Coker contends the district court erred in holding she failed to state a Section 1985 claim for civil conspiracy in Count IX. Section 1985 has three subsections—titled: "(1) Preventing officer from performing duties[,]" 42 U.S.C. § 1985(1), "(2) Obstructing justice; intimidating party, witness, or juror[,]" *id.* § 1985(2), and "(3) Depriving persons of rights or privileges[,]" *id.* § 1985(3)—each prohibiting conspiracies to interfere with civil rights. The district court determined that Coker's complaint failed to specify which subsection of Section 1985 she intended to invoke and that, in any event, her complaint failed to state a claim under any of the three subsections. We agree, and we discuss each section in turn.

Section 1985(1) applies to "conspiracies that interfere with the performance of official duties by federal officers." *Morast v. Lance*, 807 F.2d 926, 929 (11th Cir. 1987), *overruled in part on other grounds by Haddle v. Garrison*, 525 U.S. 121, 123–24 (1998); *see also Kush v. Rutledge*, 460 U.S. 719, 724 (1983); 42 U.S.C. § 1985(1). The district court concluded that Coker's complaint did not state a

[5] Moreover, as we explain, we affirm the district court's resolution of Coker's federal claims, further supporting its supplemental jurisdiction ruling.

claim under 42 U.S.C. § 1985(1) for interference with a federal office because her complaint only discussed local office, not federal office. *See Morast*, 807 F.2d at 929.

"Section 1985(2) applies only if the conspiracy attempted to prevent [a] witness from attending or testifying in federal court." *Id.* at 930 (citing *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 348 (5th Cir. 1981) (*en banc*), *overruled in part on other grounds by Kush*, 460 U.S. at 723).[6] Coker's allegations did not present such a circumstance, and thus she did not state a claim under § 1985(2) either. *Id.*

To state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996) (citing *Lucero v. Operation Rescue*, 954 F.2d 624, 627 (11th Cir. 1992)). "In the context of section 1985 conspiracy claims, 'conclusory, vague, and general allegations of conspiracy may justify

---

[6] All Fifth Circuit decisions issued by the close of business on September 30, 1981, are binding precedent in this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*). *Kimble* was issued in June 1981, so it is binding in this Circuit.

dismissal of a complaint.'" *Wainberg*, 93 F.4th at 1224 (quoting *Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985)). A claim under § 1985(3) also requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "That animus standard requires that the defendant proceeded on his course of conduct 'because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272 (1993)).

Here, the district court properly concluded Coker had "not alleged sufficient facts demonstrating a meeting of the minds between the alleged conspirators," as necessary for a complaint under Section 1985(3). *Coker*, 660 F. Supp. 3d at 1329. Coker's complaint presented vague and general allegations of misconduct by many different actors, and there were no facts alleged that tied each individual defendant's alleged misconduct to any overarching conspiracy. *Kearson*, 763 F.2d at 407. For example, Coker alleged the Newspaper defendants—Northeast Florida Newspaper, LLC and Wilson—published a story on the Lake City government and an opinion piece that advocated for the Council to delay filling the vacancy. She did not allege they were instructed by or agreed with anyone else to publish these articles. Instead, Coker's complaint contended that the articles "interfere[d] with [her] right to hold public office" and that the Lake City Reporter "had no right" to publish them. Robinson, one of the other defendants, is hardly mentioned in the amended complaint, and those mentions did not

identify any agreement between him and any of the other defendants. *See id.*[7]

Further, many of Coker's other allegations are conclusory, and "we need not accept legal conclusions, even when they are 'couched as . . . factual allegation[s].'" *Wainberg*, 93 F.4th at 1224 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For instance, at the beginning of Count IX, Coker, quoting Section 1985(3), alleged that all defendants "prevented her from performing duties . . . conspired to prevent, by force intimidation, or threat, . . . any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof." These allegations were also insufficient to state a claim. *Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

Notwithstanding these problems, Coker also failed to adequately plead that the defendants acted with "invidious discriminatory intent." *Coker*, 660 F. Supp. 3d at 1329. Specifically, the portion of Coker's complaint related to Count IX did not explain what the motivation for the defendants' alleged conspiracy was, and the defendants were not alleged to have been engaged in the conspiracy because of any class-based animus rather than personal animus

[7] We describe these defendants as examples only, and we conclude that the allegations against the other parties fail for the same reasons.

against Coker as an individual. *Dean*, 12 F.4th at 1255; *Griffin*, 403 U.S. at 102.

For these reasons, Coker's operative complaint failed to state a claim under any subsection of Section 1985, and we affirm the district court's dismissal of Count IX for that reason.

### D. *The District Court did not abuse its discretion in denying Coker's request for a Default Judgment*

Next, Coker contends the district court erred in denying her request for a default judgment against Douglas. Coker's only claim against Douglas was Count IX. The district court concluded that Douglas was "similarly situated to" the other defendants with regard to that Count and reasoned that it would be "appropriate" to dismiss Count IX against Douglas as well even though he had not appeared.

"Default is to be used sparingly," *Mitchell*, 294 F.3d at 1316, and our caselaw provides that "[a] District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related," *Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987) (quoting *Silverton v. Dep't of the Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981)). In other words, our precedent allows for the exact sort of dismissal that occurred here. *Id.* Moreover, the district court did not err in concluding that Count IX failed to state a claim, as discussed above.

Accordingly, we affirm the district court's denial of her request for a default judgment.

***E. The District Court did not err in denying Coker a Jury Trial***

Finally, Coker argues that she was entitled to a jury trial. *See* U.S. CONST. amend. VII. Yet, "there is no need to go forward with a jury trial when the pertinent facts are obvious and indisputable from the record; the only remaining truly debatable matters are legal questions that a court is competent to address." *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1190 (11th Cir. 2004). As we have explained, the district court properly dismissed Coker's claims—either for lack of standing, on supplemental jurisdiction grounds, or for failure to state a claim—so it did not err in denying Coker a jury trial. *Id.*

**V. CONCLUSION**

For these reasons, we discern no reversible error by the district court. We therefore affirm.

**AFFIRMED**

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 04, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 23-11160-AA
Case Style: Befaithful Coker v. Slyvester Warren, III, et al
District Court Docket No: 3:22-cv-00518-MMH-LLL

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing must include a Certificate of Interested Persons**. See 11th Cir. R. 40-3.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion